DECISION AND JUDGMENT ENTRY
{¶ 1} The Athens County Court of Common Pleas, Juvenile Division, permanently terminated the parental rights of Jack Bailey ("Father") and Holly Bailey ("Mother") to their children. Father appeals, asserting that a legally secure placement for the children can be achieved without terminating his parental rights, and that the trial court failed to consider reasonable alternatives to permanent custody. Because our review of the record reveals that the court considered all possible alternatives and that some competent, credible evidence supports the trial court's finding that terminating Father's parental rights is in the children's best interests, we disagree. Accordingly, we overrule both of Father's assignments of error, and we affirm the judgment of the trial court.
 I. {¶ 2} Athens County Children Services ("ACCS") filed a motion for permanent custody of Father and Mother's two children, Krystal Bailey, born January 13, 1989, and Jack Randall Bailey, born January 13, 2000. During the proceedings in the trial court and throughout the majority of his children's lives, Father was in prison. Most recently, in 2002, he committed the crimes of breaking and entering, theft, and tampering with evidence. At the time of the permanent custody hearing, Father was a few months away from completing his sentence in its entirety and being released from prison.
 {¶ 3} The evidence at the permanent custody hearing established that Mother has been addicted to painkillers for most of her children's lives. While living with Mother, Krystal often served as Jack Randall's caregiver because Mother was in a drug induced stupor and Father was in prison. Krystal testified that after going into foster care she stopped using illegal drugs and alcohol, stopped smoking, stopped missing school, stopped stealing, stopped being sexually promiscuous, and started earning A's and B's instead of D's and F's. Krystal testified at the hearing that she does not wish to return to her parents, even though she realizes that the same family may not adopt her and Jack Randall.
 {¶ 4} At the time of the hearing, Mother had no housing of her own and no employment or income. She admitted that she was living with a convicted sex offender. Father testified that his plan upon his release from prison was to move into the home of his married girlfriend, but at the same time attempt to reunite with Mother.[2] Father testified that he began receiving SSI disability income in 1998 due to an undisclosed mental health condition, but has not received benefits while in prison. He requires psychotropic medications. He testified that he has no knowledge of, nor any desire to know, his diagnosis or prognosis. He testified that he plans to begin collecting SSI disability benefits again upon his release from prison, but admitted he had taken no steps to apply for them at the time of the hearing. Finally, he testified that he has a "stealing problem" that he believes he can control when he is released from prison this time.
 {¶ 5} In addition to taking testimony from Father, Mother, and Krystal, the trial court heard testimony from the guardian ad litem, several counselors and social workers who have been involved with the family, the foster parents of Krystal and Jack Randall, and Father's mother and girlfriend. Based upon the testimony presented, the trial court found that the children had been in ACCS's custody for more than twelve months of a consecutive twenty-two month period, that ACCS had made reasonable efforts to return the children home, and that granting permanent custody to ACCS was in the children's best interest.
 {¶ 6} Father appeals, asserting the following assignments of error: "I. A legally secure placement for the children can be achieved without granting permanent custody to [ACCS]: It was not reasonable to deny Father an opportunity to parent his children. II. [ACCS] failed to consider or implement reasonable alternatives to permanent custody. Thus its efforts to prevent the continued removal of the children were not reasonable."
 II. {¶ 7} In his first assignment of error, Father contends that the trial court erred in concluding that granting permanent custody to ACCS is in the children's best interests. Specifically, Father contends that a legally secure placement for the children can be achieved without granting permanent custody to ACCS, and thus that R.C. 2151.414(D)(4) weighs against permanent custody.
 {¶ 8} R.C. 2151.414(B)(1)(d) provides in part that the court may grant permanent custody to an agency if it is in the child's best interest and "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(D) requires the court to make a finding regarding whether permanent custody is in the child's best interest. One of the five factors the trial court must consider in determining whether it is in a child's best interest to terminate parental rights is whether a "legally secure permanent placement" can be achieved without a grant of permanent custody to the agency. R.C. 2151.414(D)(4).
 {¶ 9} A permanent custody determination made pursuant to R.C.2151.414 must be supported by clear and convincing evidence. Inre Baby Girl Doe, 149 Ohio App.3d 717, 2002-Ohio-4470 at ¶ 89;In re Hiatt (1993), 86 Ohio App.3d 716, 725. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we find that the record contains sufficient evidence to satisfy the clear and convincing standard.Baby Girl Doe at ¶ 89; In re Wise (1994), 96 Ohio App.3d 619,626. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases.Baby Girl Doe at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 10} We will not substitute our own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. The trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montgomery App. No. 01CA0083, 2003-Ohio-608 at ¶ 102, citing Miller v. Miller
(1988), 37 Ohio St.3d 71, 74.
 {¶ 11} Here, Father does not dispute that Krystal and Jack Randall were in the temporary custody of ACCS for twelve or more months of a twenty-two month period. However, he argues that a legally secure placement for the children could be achieved without granting permanent custody to ACCS. In particular, he argues that he could demonstrate his ability to adequately parent his children if given more time, because he has been released from prison since the hearing and no longer intends to reunite with Mother.
 {¶ 12} The trial court found that Father, for all practical purposes, abandoned Krystal and Jack Randall through his voluntary criminal acts that led to lengthy prison sentences. Father argues that he is not likely to return to prison now because, for the first time in the children's lives, he is not merely out of prison on some type of community control, but rather has served all his sentences in their entirety. However, the evidence shows that Father, with the assistance of Mother's young adult son from a prior relationship, committed the offenses of breaking and entering, theft and tampering with evidence in 2002. Thus, the evidence does not show that the presence of one or both children in Father's life has deterred him from committing crimes in the past, and gives no indication that the children would deter him in the future.
 {¶ 13} Additionally, the trial court found that Father had no reasonable plan to obtain employment or housing to provide for the children. Father contends that he is establishing a new home without Mother, and that all of Mother's problems will no longer encumber his ability to parent the children. However, regardless of Father's intentions with respect to Mother, Father's testimony shows that Father last worked for a few weeks in 1988. He began receiving SSI in 1998 due to a mental health disability, and he believes, but has taken no steps to assure, that he will start receiving SSI again when he is released from prison. He requires psychotropic medications, but claims to have no knowledge of or interest in knowing his diagnosis. He testified that his housing plan upon release from prison was to move in with a married female friend with whom he has maintained an on-again/off-again romantic relationship, while simultaneously attempting to reunite with Mother.
 {¶ 14} As ACCS notes in its brief, a child does not first have to be put into a particular environment before the court can determine that the environment is unhealthy or unsafe. In reBishop (1987), 36 Ohio App.3d 123, 124; In re Campbell (1983),13 Ohio App.3d 34, 36. "The unfitness of the parent, guardian or custodian can be predicted by past history." Bishop at 126; Inre Baby Boy Eddy (Dec. 6, 1999), Fairfield App. No. 98AB36.
 {¶ 15} Here, competent, credible evidence in the record supports the trial court's finding that a legally secure placement cannot be achieved without granting permanent custody to ACCS. In particular, the record contains competent, credible evidence that Father cannot adequately parent his children. Father's demonstrated propensity to commit crimes, combined with his lack of an adequate plan for income or housing upon his release from prison, support the trial court's finding that Father will continue to face a serious challenge maintaining his own life upon his release from prison, regardless of whether he reunites with Mother. Since the record contains competent, credible evidence supporting the trial court's finding that Father cannot provide a legally secure placement for the children, we overrule Father's first assignment of error.
 III. {¶ 16} In his second assignment of error, Father contends that the trial court erred in finding that ACCS made reasonable efforts to prevent the children's continued removal from his custody, because ACCS did not consider or implement reasonable alternatives to permanent custody. In support of this assignment, Father argues that ACCS failed to consider placing the children with their paternal grandmother, that ACCS should have forced Krystal to attend visitation with Mother when Krystal refused, and that ACCS interfered with Krystal's visitation with Father by insisting that Krystal's counselor approve of the visits.
 {¶ 17} Pursuant to R.C. 2151.419(A)(1), before granting permanent custody to a public children's services agency, the trial court must determine whether the agency made reasonable efforts to prevent the continued removal of the children from the home. In determining whether the agency made reasonable efforts to reunify the children with their parents, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776 at ¶ 18. The trial court need not make such a finding in the event that the parent has abandoned the child. R.C. 2151.419(A)(2)(d).
 {¶ 18} The trial court found that ACCS made reasonable efforts to prevent the removal of the children from the home and to eliminate their continued removal from the home. Specifically, ACCS provided family based services, housing relocation, transportation, financial aid, counseling, and visitation. The court noted that despite ACCS's efforts, neither parent has employment or housing or any reasonable plan to obtain either. Additionally, with respect to Father, the trial court found that Father effectively abandoned the children.
 {¶ 19} We find that the record contains some competent, credible evidence supporting the trial court's finding that ACCS made reasonable efforts to prevent the children's continued removal from the home. While the record does not contain evidence that ACCS considered placing the children with their paternal grandmother, it does show that the grandmother had no contact with either child during the entire time Father was in prison. In addition to Father, she has another son who is in prison and a daughter who is a prostitute. Neither she nor Father ever filed a motion with the court in which they sought placement of the children with her. Finally, she testified that Krystal is better off in foster care. Thus, the fact that the record does not contain evidence that the ACCS considered the grandmother as a placement alternative does not contradict the trial court's finding that ACCS made reasonable efforts to prevent the continued removal of the children from their home.
 {¶ 20} Father next suggests that ACCS did not make reasonable efforts based on its refusal to force Krystal to attend visitation with Mother. Father argues that Krystal's expressed desire to be adopted may have been different if Krystal had been forced to attend visitation. We find no merit to these arguments. First, Mother does not appeal the trial court's determination that her parental rights should be terminated. Father does not articulate how visitation with Mother would have affected Krystal's feelings about him or helped him demonstrate his ability to be a parent to Krystal. Moreover, the record reflects that Krystal did attend visitation with Mother at least through the time she testified at the permanent custody hearing and expressed her desire to be adopted. Krystal testified that Mother was high on pills during her visit in the week before the permanent custody hearing began.
 {¶ 21} Finally, the record does not support Father's allegation that ACCS thwarted his reunification efforts by requiring that Krystal's counselor approve visitation with Father. Father does not make any citations to the record to support his allegation that ACCS required counselor approval for Krystal's visits, and ACCS denies that it ever instituted such a requirement. The trial court ordered that Father's visits with Krystal be subject to her wishes. Given Krystal's age and the fact that Father was in prison during most of her life, Krystal's choice to not visit Father on some occasions is not surprising.
 {¶ 22} As we noted above, the test for determining whether the public agency satisfied its statutory duty is not whether the agency could have done more, but rather whether the agency made reasonable efforts to reunify the family. Myers, supra. Here, Father abandoned the children. Additionally, ACCS made reasonable efforts to return the children to their home by providing numerous services. As the trial court found, "[t]hese efforts did not prevent or eliminate the need for removal because the faults and habits of the parents are too substantial." Accordingly, we overrule Father's second assignment of error.
 IV. {¶ 23} In sum, we find that the record contains some competent, credible evidence supporting the trial court's finding that placing Krystal and Jack Randall in the permanent custody of ACCS is in the best interests of the children. Additionally, we find that some competent, credible evidence supports the trial court's finding that ACCS made reasonable efforts to prevent the removal and eliminate the continued removal of the children from the home. Accordingly, we affirm the judgment of the trial court.
Judgment affirmed.
[2] In his brief to this court, Father states that he no longer wishes to reunite with Mother because he recognizes that her drug problem prevents him from parenting his children effectively. However, we confine our analysis to the testimony and evidence adduced in the trial court. See Brantley v. Ghee (1997),80 Ohio St.3d 287, 288 ("[A] reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." (Citations omitted.))