DECISION AND JUDGMENT ENTRY
{¶ 1} John Cunningham ("Father"), father of Brittany, Bethany, and Shawn Cunningham, appeals the Athens County Court of Common Pleas, Juvenile Division, adjudication granting permanent custody of his children to Athens County Children Services ("ACCS"). Father contends that the trial court's findings are not supported by sufficient evidence and are contrary to the manifest weight of the evidence, and therefore that the trial court abused its discretion when it determined that terminating his parental rights is in the children's best interest. Because the record contains some competent, credible evidence supporting the trial court's findings, we disagree. Additionally, Father contends that the trial court erred in finding that ACCS made reasonable efforts to prevent the continued removal of the children from his home as required by R.C. 2151.419. Because the record contains some competent, credible evidence that ACCS made reasonable efforts to prevent the removal of the children from the home, we disagree. Accordingly, we overrule each of Father's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} Father and Jody Cunningham ("Mother") are the parents to three children: Brittany, born 7/7/1989; Bethany, born 11/3/1992; and Shawn, born 1/27/1999. ACCS assumed custody of the children on February 10, 2002, after Father left the family without any means of support. ACCS discovered that: Father abandoned the family; the home was filthy; Mother admitted to using marijuana in the home; the children were not receiving proper medical care; the children had missed an inordinate number of school days; and the children were receiving very little supervision at home. Brittany's counselor diagnosed her with post-traumatic stress disorder, conduct disorder, and numerous learning disabilities. Bethany's counselor diagnosed her with adjustment disorder. Shawn's counselor diagnosed him with post-traumatic stress disorder, conduct disorder, and a speech disorder. The children reported observing domestic violence and drug abuse in their home, and Brittany reported sexual abuse.
 {¶ 3} On April 19, 2002, the court adjudicated the children neglected and dependent children. At a disposition hearing on May 16, 2002, the trial court ordered that the children remain in the temporary custody of ACCS, but also ordered that it would return Bethany and Shawn to the custody of the parents if both parents had three consecutive negative drug screens. Father and Mother divorced in December of 2002. Both continued to test positive for drug use.
 {¶ 4} ACCS filed for permanent custody on April 15, 2003, as both parents were non-compliant with the court orders and case plan for reunification. Father again tested positive for drug use shortly thereafter. The trial court held a hearing on ACCS's motion and determined that both Father and Mother love the children and wish to have the children returned to them. Father presented evidence that he had undergone substance abuse counseling, acquired a home with sufficient room for the children, and obtained a job. However, Mother conceded that she was unable to care for the children.
 {¶ 5} The trial court denied ACCS's motion for permanent custody, finding that thus far ACCS had only made efforts to reunite the entire family. The court held that, in light of the parents' divorce, ACCS should provide Father with additional time to show that he alone is able to provide the children with a stable and nurturing home. In particular, the court noted that Father had undergone substance abuse counseling, held a job for approximately seven months, and obtained housing. The court ordered that ACCS retain temporary custody of the children while attempting to reunify them with Father.
 {¶ 6} ACCS filed an amended case plan with the court to address the problems that made it unsafe for the children to return home with Father. Additionally, ACCS appealed the trial court's determination on its permanent custody motion. On February 17, 2004, this court affirmed the trial court's judgment denying the ACCS's motion for permanent custody in In reCunningham, Athens App. No. 03CA26, 2004-Ohio-787.
 {¶ 7} On March 29, 2004, the court conducted a review hearing and again ordered that the children remain in the temporary custody of ACCS. On May 18, 2004, ACCS filed a new motion for permanent custody.
 {¶ 8} At the hearing on the second motion for permanent custody, the evidence revealed that Father did not abide by ACCS's amended case plan. He quit attending substance abuse and anger management counseling, quit submitting to drug screens, and continued to use drugs, all in direct violation of the case plan. He admitted to using illegal drugs just three weeks prior to the hearing.
 {¶ 9} The evidence further showed that Father was evicted from his home for not paying rent, despite the fact that ACCS and the Department of Job and Family Services had provided him with financial assistance for his rent and utilities. Father became involved with a nineteen year-old pregnant woman who cannot identify the father of her baby (though she has eliminated two possible fathers via genetic testing.) The evidence showed that Father's new girlfriend is unemployed, has failed to comply with the Department of Jobs and Family Services work requirement, is low functioning, and is incapable of taking care of Father's children. Father testified that he has "secure housing." Specifically, he testified that he, his girlfriend, and the girlfriend's baby moved in with the girlfriend's mother in March of 2004.
 {¶ 10} Finally, the evidence showed that Father quit his steady job at the Nelsonville Burger King, and instead began to work as an independent contractor. Father testified that his new job pays $5.75 an hour, that his weekly take-home pay is $300 to $450, and that he works approximately 40 hours per week. On cross-examination, when ACCS pointed out that Father would need to work between 52 and 78 hours per week at a rate of $5.75 an hour to make $300 to $450, Father stated that he sometimes makes as much as $8 an hour. An ACCS caseworker testified that Father submitted two hand-written paystubs from his new employer. One showed that Father worked 28 hours, and the other showed that he worked 32 hours.
 {¶ 11} The trial court granted ACCS's second motion for permanent custody. The court found that Father's choices are completely inconsistent with his contention that his children are his top priority. In particular, the court noted that, when given the opportunity to establish a home for his children, Father instead took up with a nineteen year-old pregnant girl, continued to use marijuana, and moved out of Athens County. The court further found that, while the girlfriend's mother may have a larger home than Father could afford alone, the home is not stable given the fragile nature of the relationships involved. Thus, the trial court found that granting permanent custody to ACCS is in the children's best interests, and the court granted ACCS's motion for permanent custody.
 {¶ 12} Father appeals, asserting the following assignments of error: "I. The trial court's reliance on isolated marijuana usage by Father, in the absence of proof that the children had been harmed or placed at risk as a direct result, was misplaced. Insufficient evidence was adduced to grant permanent custody to Childrens (sic) Services. II. The childrens' (sic) counselors testified that it was not in their best interests to terminate parental rights. The trial court's decision was an abuse of discretion, and against the manifest weight of the evidence. III. Children Services chose to again seek permanent custody only two months after the court of appeals sustained the denial of the first motion. Its efforts to prevent the continued removal of the children were not reasonable."
 II. {¶ 13} R.C. 2151.414(B)(1)(d) provides in part that a court may grant permanent custody to an agency if it is in the child's best interest and "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twentytwo month period ending on or after March 18, 1999." R.C. 2151.414(D) requires the court to make a finding regarding whether permanent custody is in the child's best interest, and enumerates five factors the court must consider in determining whether it is in a child's best interest to terminate parental rights. Those five factors are: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply. Where the juvenile court finds pursuant to R.C. 2151.414(B)(1)(d) that the child has been in the temporary custody of one or more public children services agencies for twelve or more of a consecutive twenty-two month period ending on or after March 18, 1999, the court need not find that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents pursuant to R.C. 2151.414(B)(1)(a) and2151.414(E).
 {¶ 14} A permanent custody determination made pursuant to R.C. 2151.414 must be supported by clear and convincing evidence.In re Baby Girl Doe, 149 Ohio App.3d 717, 2002-Ohio-4470 at ¶89; In re Hiatt (1993), 86 Ohio App.3d 716, 725. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we can find that the record contains sufficient evidence to satisfy the clear and convincing standard.Baby Girl Doe at ¶ 89; In re Wise (1994), 96 Ohio App.3d 619,626. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases.Baby Girl Doe at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74.
 {¶ 15} We will not substitute our own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. The trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montogomery App. No. 01CA0083, 2003-Ohio-608 at ¶ 102, citing Miller v. Miller
(1988), 37 Ohio St.3d 71, 74.
 A. {¶ 16} In his first assignment of error, Father contends that the trial court's decision is not supported by sufficient evidence. In particular, Father asserts that the trial court mistakenly based its decision solely on his continued marijuana use.
 {¶ 17} Father does not dispute that his children were in the temporary custody of ACCS for 12 or more months of a 22 month period. However, Father contends that instead of the statutory analysis outlined above, our analysis should be guided by the question of whether the prospect of reunification got markedly worse from the first permanent custody hearing to the second. Father argues that so long as his circumstances were the same or better, the trial court should not have terminated his parental rights. Additionally, Father argues that his circumstances improved, because he began working as an independent contractor and moved into a larger home between the first hearing and the second hearing. Finally, Father argues that the trial court based its decision to terminate his parental rights on the fact that he used drugs once, three weeks before the hearing.
 {¶ 18} We decline to depart from the statutory framework laid out by the General Assembly for custody determinations. Contrary to Father's contention that the trial court relied solely upon one isolated incident of drug use, the trial court made factual findings relating to each of the R.C. 2151.414(D) factors for determining the children's best interests. Specifically, the trial court found with regard to the children's interrelationship with Father and others, that the children were inadequately cared for when in Mother and Father's custody, that they witnessed domestic violence and drug and alcohol abuse in their home, and that they made substantial progress in foster care. With regard to the children's wishes, the trial court found that the children love their parents but do not wish to reunite with their parents. With regard to the children's custodial history, the trial court found that the children have been in ACCS custody for more than twelve months in a consecutive twenty-two month period. With regard to the children's need for legally secure placements, the trial court found that each of the children has special needs as a result of poor upbringing, and that each needs a degree of stability, consistency and safety greater than that which Father is willing or able to provide. Finally, the trial court found that none of the R.C. 2151.414(E)(7) to (11) factors apply.
 {¶ 19} We find that the record contains some competent, credible evidence to support the trial court's findings. Specifically, the evidence in the record shows that Father not only continues to use drugs, but also that he stopped attending counseling, was evicted from his home, began dating a woman who was barely older than his daughter and pregnant by another man, and now relies upon his girlfriend's mother for housing. We find that the evidence of Father's drug use, particularly when paired with evidence of the other items enumerated by the trial court, constitutes evidence that Father is unwilling or unable to provide the children with a home that is stable, secure, and safe. Thus, the record contains evidence supporting the trial court's determination that the best interests of the children will be served by granting permanent custody to ACCS. Accordingly, we overrule Father's first assignment of error.
 B. {¶ 20} In his second assignment of error, Father contends that the trial court's finding that it is in his children's best interest to terminate his parental rights is against the manifest weight of the evidence and an abuse of discretion. In particular, Father contends that all of the children's counselors testified that it was not in the children's best interest to terminate his parental rights.
 {¶ 21} We outlined our standard of review and the factors a court must consider in determining the children's best interests above. Contrary to Father's characterization, the children's counselors did not testify that terminating his parental rights is not in the children's best interest. Brittany's counselor testified that termination of Father's parental rights is "not necessarily" in Brittany's best interest, because Brittany might benefit from knowing how her parents' lives are progressing. Bethany's counselor testified that Bethany does not want to return to her parents, though she does not want to break all ties with them. And Shawn's counselor testified that, since she had not met his parents, she could not form an opinion as to whether terminating their parental rights is in Shawn's best interests. She noted, however, that Shawn has a very strong relationship with his foster parents.
 {¶ 22} While a child's counselor's opinion certainly constitutes relevant evidence that the trial court may consider in weighing the R.C. 2151.414(D) factors to determine what is in a child's best interest, the counselor's opinion is in no way binding on the court. The counselors' opinions in this case are equivocal; both Father and ACCS can point to portions of the counselors' testimony to support an argument that the weight of the evidence supports their case.
 {¶ 23} As we noted above, the trial court considered the R.C.2151.414(D) factors and listed numerous reasons why terminating Father's parental rights is in the children's best interests. Some competent, credible evidence in the record supports the court's findings. Thus, we find that the trial court's determination regarding the children's best interest is not contrary to the manifest weight of the evidence, and that the trial court did not abuse its discretion in terminating Father's parental rights. Accordingly, we overrule Father's second assignment of error.
 III. {¶ 24} In his third assignment of error, Father contends that ACCS did not make reasonable efforts to prevent the continued removal of the children from his custody. Specifically, Father contends that ACCS did not tailor a specific case plan for Father alone after the trial court denied ACCS's motion for permanent custody. Additionally, Father contends that it was unreasonable for ACCS to schedule the children's appointments on days when he had to work.
 {¶ 25} Pursuant to R.C. 2151.419(A)(1), before granting permanent custody to a public children's services agency, the trial court must determine whether the agency made reasonable efforts to prevent the continued removal of the children from the home. In determining whether the agency made reasonable efforts to reunify the children with their parents, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.In re Myers, Athens App. No. 02CA50, 2003-Ohio-2776 at ¶ 18. We will not reverse the trial court's determination regarding reasonable efforts as long as the record contains some competent, credible evidence to support it. In re Bailey, Athens App. No. 04CA11, 2004-Ohio-3628; Baby Girl Doe at ¶ 89.
 {¶ 26} Here, the record reveals that ACCS tailored a case plan specific to Father. Father's case plan required him to stop using illegal drugs and to attend substance abuse and anger management counseling. ACCS referred Father to counselors in Athens County and, when Father moved to Morgan County with his girlfriend, ACCS provided him with a referral to obtain counseling there. Nonetheless, Father quit attending counseling and made only minimal efforts to resume counseling. Additionally, Father continued to use drugs, and informed ACCS representatives that no one has the right to tell him he cannot use marijuana.
 {¶ 27} ACCS provided Father with assistance in paying his rent and his utilities. Nonetheless, Father was evicted from his home. Instead of obtaining independent housing, Father now relies upon his girlfriend's mother for housing. An ACCS caseworker visited the girlfriend's mother's house in March of 2004 and determined that it was not an appropriate residence for the children. Father informed her that he planned to finish an addition to the home that would give it two extra bedrooms. However, when ACCS returned in July to inspect the house, Father had not taken any steps toward finishing the addition.
 {¶ 28} We find that, competent, credible evidence supports the trial court's determination that ACCS made reasonable efforts to reunify Father with his children. Specifically, in tailoring a case plan specific to Father, in providing Father with referrals for counseling, and in providing Father with financial assistance for housing, ACCS made reasonable efforts to help Father rectify the conditions that prevented his children from returning to his custody. Thus, we overrule Father's third assignment of error.
 {¶ 29} Because the record contains some competent, credible evidence that granting ACCS permanent custody is in the children's best interest, and because the record contains some competent, credible evidence that ACCS made reasonable efforts to reunify the family, we overrule Father's assignments of error. Accordingly, we affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment only.
Abele, J.: Concurs in Judgment and Opinion.