DECISION AND JUDGMENT ENTRY
{¶ 1} Candace Townsend appeals the judgment of the Athens County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, Kathryn Townsend and Krista Miller, to Athens County Children Services ("ACCS"). Appellant argues that the trial court erred because ACCS violated the case plan by denying her visitation and telephone contact with her children without resorting to the formal amendment procedures required by R.C. 2151.412(E)(2) and, thereby, failing to make reasonable efforts at reunification as required by R.C.2151.419(A)(1). Because the trial court clearly ordered that ACCS may modify visitation as appropriate and such a modification was appropriate and necessary due to Appellant's illness, we disagree that the trial court erred in terminating Appellant's parental rights despite ACCS' decision to temporarily terminate visitation. We also disagree with Appellant's argument that ACCS' decision to terminate all telephone contact with her children mandates reversal of the trial court's judgment because R.C. 2151.414(C) permits a trial court to grant permanent custody even when a public children's services agency fails to comply with a particular aspect of a case plan. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} On March 17, 2003, ACCS filed a complaint alleging that Kathryn Townsend and Krista Miller were neglected and dependent children. The trial court adjudicated both children as neglected and dependent on March 20, 2003. On June 16, 2003, the trial court transferred the case to Washington County Children Services ("WCCS") after it granted temporary custody of the children to Kathryn's paternal grandparents, Ray and Francis Allison. In March 2004, the trial court transferred the case back to Athens County after the Allisons informed WCCS they wished to move out of state and could no longer care for the children because of their health. On March 24, 2004, ACCS placed the children in foster care in Athens County.
 {¶ 3} ACCS filed for permanent custody on September 9, 2004. At the hearing, ACCS presented testimony from Peggy Stevens, Jamie Vuksic, Amy Stewart, Deputy Steve Heater, Connie Osborne, Erin Lucas, Nicole Dennis, and Amy Carlisle. Appellant failed to attend the hearing and never contacted her court appointed attorney before the hearing. Nevertheless, the trial court ordered Appellant's attorney represent her to the best of his ability given the circumstances.
 {¶ 4} Peggy Stevens, a family service worker with ACCS, began working with Appellant and her children in March 2003. Stevens testified that the case plan required Appellant, in part, to complete a drug and alcohol assessment and work with the Athens County Department of Job Family Services to obtain food stamps and update state medical cards for her children. Appellant failed to achieve either objectives between March and June 2003. ACCS informed Appellant of the children's school meetings and doctor appointments, but Appellant failed to attend any meeting or appointment. Appellant's case plan also required her to (1) submit to random drug screenings, which she refused and (2) seek mental health counseling, which she failed to do. When the trial court transferred the case plan to Washington County in June 2003, Appellant was noncompliant with every aspect except visitation with her children. Stevens testified that Appellant's visitations were consistent and went well.
 {¶ 5} Jamie Vuksic, a protective caseworker with WCCS, became involved with Appellant and her children when the trial court transferred the case to Washington County in June 2003. When Appellant first met with Vuksic, she advised him that she was currently drug free, but admitted to prior drug abuse with heroin, Vicodin, and Percocet. However, Appellant later confessed to Vuksic that she lied to him and admitted that she still used opiates. She then advised Vuksic that she wanted to enter the Rural Women's Health Recovery Program, which, according to Vuksic, was a major step toward Appellant completing her case plan. Appellant entered the program on August 18, 2003, but unsuccessfully left the program eleven days later. Appellant claimed she left the program because she was not permitted visitation with her children. Vuksic testified that visitation could not occur during Appellant's first month in the program because the program did not permit off-campus activity until the first month elapsed and the Allisons did not have the transportation necessary to take the children to the treatment center.
 {¶ 6} After Appellant left the Rural Women's Health Recovery Program, she began a methadone treatment program at the Parkersburg Treatment Facility in September 2003. Vuksic testified that Appellant admitted to him that she tested positive for drugs while in the program. Appellant discontinued the program in January 2004 because she began taking prescription Vicodin to relieve pain from a broken wrist. The Parkersburg staff advised Appellant to request a non-narcotic pain reliever prescription from her doctor and she refused.
 {¶ 7} In February 2004, Appellant advised Vuksic that she wished to enter EAVE, a program for battered women, or a similar program. Appellant failed to enroll in EAVE or any other program. Vuksic testified that Appellant also failed to attend the semi-annual review meeting in late February.
 {¶ 8} On March 23, 2004, the trial court transferred the case back to Athens County. Vuksic testified that at the time of the transfer, Appellant was noncompliant with the case plan because she failed to complete a mental health assessment and drug and alcohol assessment and obtain permanent employment as required by the case plan.
 {¶ 9} When the case returned to Athens County, Stevens continued as the caseworker. On April 19, 2004, ACCS amended the case plan to include a requirement that Appellant provide safe housing free of criminal acts and persons using or abusing drugs and alcohol. Appellant began to comply with the case plan and completed her drug and alcohol assessment. Stevens testified that a home visit in May 2004 showed that Appellant's home was clean, but stated that she was still concerned because Andy Monk, Appellant's abusive boyfriend, was still "coming and going from the house." ACCS provided Appellant with financial support for her rent, electric bills, medication, and transportation, totaling over $1,500.
 {¶ 10} Appellant's visitations with her children were sporadic because of illness. Stevens testified that Appellant informed her that she was suffering from a severely contagious case of strep throat and was unable to afford the medication necessary to recover. Because of the contagious illness, Appellant felt she needed to cancel visitation appointments. ACCS provided Appellant with the money for the prescribed medication, but she failed to properly take the medication and the illness kept reoccurring. Finally, Stevens suspended visitation and advised Appellant that to resume visitation she must provide ACCS with a letter from her treating physician stating that she no longer suffered from a contagious illness. Appellant never provided a letter and visitation has not resumed. Stevens admitted that she did not follow the amendment procedures set out in R.C. 2151.412(E)(2) when she terminated the visitation, but stated that a May 3, 2004, journal entry permitted modification of visitations as appropriate.
 {¶ 11} Stevens testified that she also suspended telephone contact between Appellant and her children in July 2004. Again, Stevens admitted she did not follow the amendment procedures for this change to the case plan. Stevens testified that she suspended telephone contact because Appellant failed to submit to requested drug screens and advised Appellant that telephone contact would resume when Candace submitted to a drug screen and provided a letter from her doctor stating that she was no longer suffering from a contagious illness.
 {¶ 12} According to Stevens, Appellant refused at least one drug screen and failed to respond to two other drug screen requests. Appellant last submitted to a drug screening on April 7, 2004. The results from that screening were negative, but Stevens noted that ACCS considers one drug screen positive because Appellant refused to submit to it. Stevens also testified that Appellant has acted uncooperatively with ACCS by failing to return phone calls, update her phone number and address, maintain weekly contact with her caseworker, and attend the semi-annual review meeting.
 {¶ 13} Amy Stewart, a substance abuse and mental illness counselor at Health Recovery Services ("HRS"), testified that she counseled Appellant and performed her drug and alcohol assessment. According to Stewart, Appellant was aware of her substance abuse triggers, which were anger, lack of compassion from others, and the separation from her children. Stewart diagnosed Appellant with opiate dependence, cannabis dependence, and post-traumatic stress disorder. Appellant's treatment plan required her to recognize her addiction, be aware of her substance abuse triggers, obtain a recovery environment, obtain coping mechanisms, reduce stress in her life, and participate in group and individual counseling. Stewart testified that Appellant submitted to four drug screens, all of which were negative. However, Appellant has not submitted to a drug screen since May 2004 and refused a drug screen in March 2004, which HRS considers a positive screen. Appellant has not attended any appointments since June 2004.
 {¶ 14} Deputy Steve Heater testified that he responded to a domestic disturbance call at Appellant's home on July 24, 2004. Appellant advised him that she used cocaine and heroin that day with Andy Monk. Appellant reported that Monk left a needle in his arm and that his blood began spraying around the home, which then caused a domestic disturbance. Monk hit Appellant and threatened her with a gun throughout the day. When Heater arrived at the residence, two other deputies were on the scene and Monk was in handcuffs. Based on a report from Monk, Heater searched for a purse hidden behind a washing machine in the home. Inside the purse, Heater found syringes, a crack pipe, and four packets of heroin. Appellant admitted that the purse and contents belonged to her.
 {¶ 15} Connie Osborne, Kathryn and Krista's foster mother, testified to the children's situation since their placement in her home. She testified that the children were frightened and struggling in school when they first arrived, but stated that they are now comfortable in the home and excelling in school. She admitted that visitations with their mother seem to go well, but noted that the children seem "torn" about returning to her. Osborne testified that Krista had trouble with bedwetting and that the trigger for it seemed to be visitation and telephone contact with her mother, but that these problems have ceased since ACCS terminated visitation and telephone contact.
 {¶ 16} Erin Lucas, a social worker at Tri-County Mental Health, counsels Krista. Lucas testified that Krista is diagnosed with adjustment disorder with anxiety. During counseling, Krista admitted that she fears Andy Monk and sometimes fears her mother. However, she was not able to expand on the reasons for fearing her mother. Lucas engaged her in thera-play counseling, with a goal toward increasing her trust in her primary caregiver. Initially, Lucas wanted to engage in the thera-play counseling with Krista and her mother, but Appellant failed to attend the appointment and Lucas decided to utilize the foster mother as the primary caregiver in the counseling. Lucas testified that the best home for Krista is one with "an environment which provides for the physical and emotional well-being. * * * [A] home where she feels safe."
 {¶ 17} Nicole Dennis, a child mental health counselor at Tri-County Mental Health, counsels Kathryn. Dennis testified that Kathryn is diagnosed with unspecified adjustment disorder. In counseling, Kathryn does not like to talk about her family, but will talk about Krista when questioned. She will speak about her foster home, seems to enjoy her time there, and calls her foster mother "mom." Dennis testified that Kathryn's treatment goal is to discern and understand her role in the home as that of a child rather than that of mother. According to Dennis, Kathryn tends to assume the role of "mother hen" due to her mother's problems. The treatment is proceeding successfully and she generally remains within the role of child, but has occasional lapses into the "mother hen" role. Dennis also testified that Kathryn advised her she would feel neither happy nor sad if she could not return home with her mother and admitted that she does not wish to state her preferred living arrangements for fear of hurting her mother. She also admitted she fears that returning to her mother will cause her to lose the weight she has gained since she was placed in foster care.
 {¶ 18} Amy Carlisle acted as the children's guardian ad litem. The trial court appointed Carlisle to the case in June 2004. She testified that she met with both children approximately eight or nine times, but never met with their mother because Appellant failed to attend the visitations Carlisle attended. Carlisle recommended the trial court grant permanent custody to ACCS.
 {¶ 19} In closing arguments, Appellant's attorney argued that ACCS failed to make reasonable efforts at reunification as required by R.C.2151.419(A)(1) because it unilaterally terminated visitation and telephone contact without following the mandatory amendment procedures set forth in R.C. 2151.412(E)(2). ACCS argued that a journal entry dated May 3, 2004, permitted it to modify visitations as it deemed appropriate, provided it took into account input from the counselor and foster parent.
 {¶ 20} The trial court granted permanent custody to ACCS. In its judgment entry, the trial court found that pursuant to R.C.2151.414(B)(1)(a), permanent custody was in the children's best interest and that the children cannot be reunified with their mother within a reasonable time or should not be reunited with their mother. Specifically, the trial court analyzed the factors set forth in R.C.2151.414(D) and found permanent custody to be in the children's best interest and analyzed R.C. 2151.414(E)(1)-(2) and found that Appellant cannot be reunited with either child within a reasonable time or should not be reunited with either child. Finally, the trial court found, pursuant to R.C. 2151.419(A)(1) that ACCS "made reasonable efforts to prevent the removal of the [children] from the home, to eliminate the continued removal of the [children] from the home, and to make it possible for the [children] to return safely to the home. Specifically, the agency has worked with mother to establish a case plan that mother agreed was appropriate and necessary. ACCS provided numerous service referrals, transportation, visitation, substitute care, and significant financial assistance. These efforts did not prevent or eliminate the need for removal because, mother either cannot or will not modify her behaviors to allow her to create a safe and stable home for these children."
 {¶ 21} Appellant appeals and assigns the following assignment of error: "The trial court erred in terminating parental rights where Athens County Children Services deprived appellant of all contact with her children in violation of the case plan.
 II. {¶ 22} In her sole assignment of error, Appellant argues that the trial court erred in granting permanent custody because ACCS failed to make reasonable efforts to prevent the continued removal of the children from her custody by unilaterally altering the case plan without resorting to the mandatory amendment procedures set forth in R.C. 2151.412(E)(2). Appellant contends that before ACCS improperly and unilaterally modified the case plan, she was in compliance and making the improvements necessary to successfully it. She alleges that if ACCS had maintained the visitation and telephone contact required by the case plan she would have continued to comply with, and successfully completed, the plan.
 {¶ 23} Before a trial court may grant permanent custody to a public children's services agency, it must determine that the agency made reasonable efforts to prevent the continued removal of the children from the home. R.C. 2151.419(A)(1); In re Cunningham, Athens App. No. 04CA39,2004-Ohio-6568, at ¶ 25. In determining whether the agency made reasonable efforts to reunify the children with their parents, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers,
Athens App. No. 02CA50, 2003-Ohio-2776 at ¶ 18. Moreover, in making this determination, the health and safety of the child are paramount and the trial court is not required to deny a motion for permanent custody "solely because the agency failed to implement any particular aspect of the child's case plan." R.C. 2151.419(A)(1); R.C. 2151.414(C). We will not reverse a trial court's determination regarding reasonable efforts provided the record contains some competent, credible evidence to support the judgment. In re Bailey, Athens App. No. 04CA11, 2004-Ohio-3628.
 {¶ 24} In the case sub judice, the trial court issued a journal entry on May 3, 2004, which stated: "Visitation shall be modified as appropriate with attention paid to counselor and foster parent input regarding the visitation." Stevens testified that she suspended the visitation due to Appellant's reoccurring contagious illness. ACCS provided Appellant with the medication necessary to recover from the illness, but she failed to take the medication as prescribed and the illness reoccurred. Stevens testified that the suspension was temporary and that reinstatement of visitation was contingent on Appellant providing ACCS with a letter from her treating physician attesting to her good health.
 {¶ 25} The trial court found that ACCS made reasonable efforts to prevent the continued removal of the children, but did not directly address Appellant's argument regarding the termination of visitation. Nevertheless, some competent, credible evidence supports the trial court's general determination that ACCS complied with R.C. 2151.419(A)(1).
 {¶ 26} ACCS provided multiple services to Appellant, including substantial financial support, referrals for drug and mental health counseling, and HRS assistance. These resources and services constitute reasonable efforts to prevent the removal of the children from the home. ACCS took a reasonable action by temporarily suspending visitation, even if it was detrimental to Appellant's completion of the case plan, in order to protect the health of the children.
 {¶ 27} Moreover, pursuant to the May 3, 2004, journal entry, ACCS had the authority to modify visitation as appropriate, which it did when Stevens suspended visitation in the interest of protecting the children's health. R.C. 2151.412(E)(2) requires any party to a case plan to file any proposed substantive changes to the plan with the trial court. While it is generally a substantive change to the case plan for a public children's services agency to unilaterally suspend visitation, we refuse to make this a stringent rule. In a situation such as this, where the parent could easily and reasonably resume visitation and the entire purpose for the suspension was the health and safety of the children, a temporary termination of visitation does not constitute reversible error.
 {¶ 28} We cannot interpret the trial court's May 3, 2004, journal entry as permitting ACCS to make substantive changes to visitation without recourse to the mandatory requirements contained in R.C.2151.412(E)(2), but ACCS' temporary suspension of visitation does not constitute a substantive change. If ACCS permanently terminated visitation or terminated it for a reason other than protecting the children's health, such as forcing Appellant into compliance with other aspects of her case plan, we would consider it a substantive change. However, the termination was only temporary, contingent on Appellant's recovery and documentation of that recovery, and enacted only for the protection of the children's health.[1]
 {¶ 29} Appellant also argues that the trial court erred when it found that ACCS made reasonable efforts to prevent the continued removal of the children from her custody when it unilaterally terminated all telephone contact between her and her children. At the hearing Stevens testified that she terminated all telephone contact because Appellant failed to submit to requested drug screens and provide a letter from her treating physician regarding her health.
 {¶ 30} We cannot find that this was an appropriate modification to the case plan, as allowed by the May 3, 2004, journal entry, because the basis for the termination was not concern for the health and safety of the children, but mainly to force Appellant into compliance with other aspects of her case plan. Thus, this constituted a substantive change to the case plan, which Ohio law does not permit without recourse to the mandatory procedure set out in R.C. 2151.412(E)(2). However, this error does not alter the fact that some competent, credible evidence still supports the trial court's finding that ACCS made reasonable efforts to prevent the removal of the children from their home. R.C. 2151.414(C) specifically states that a trial court is not required to deny permanent custody "solely because the agency failed to implement any particular aspect of the child's case plan." ACCS did fail to implement telephone contact between Appellant and her children as required by the case plan, but this one failure does not negate the numerous and substantial efforts ACCS made to reunify Appellant with her children through the duration of this case.
 {¶ 31} We acknowledge that the terms of a case plan bind all parties involved. R.C. 2151.412(E)(1). A party's failure to comply with the case plan can result in a finding of contempt by the trial court. Id. A party can only make a substantive change to the case plan by following the amendment procedures set forth in R.C. 2151.412(E)(2). While a party may implement a non-substantive change to a case plan without a hearing, such changes should only be effected with great care and concern for all parties involved.
 {¶ 32} Here, ACCS was not required to follow the statutory amendment procedure when it temporarily suspended visitation because the May 3, 2004, journal entry gave it the authority to make non-substantive modifications relating to visitation. However, even without this journal entry, we still would not reverse the trial court's finding that ACCS made the reasonable efforts required by R.C. 2151.419(A)(1) because ACCS terminated visitation due to its paramount concerns for the health and safety of the child. See, R.C. 2151.419(A)(1) ("In determining whether reasonable efforts were made, the child's health and safety shall be paramount."). Finally, even though ACCS altered the case plan by denying Appellant telephone contact with her children, that alone is not a basis for reversal when some competent, credible evidence still supports the trial court's judgment. See, R.C. 2151.414(C). Accordingly, Appellant's sole assignment of error is without merit and we affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. Harsha, J.: Concur in Judgment and Opinion.
[1] In fact, prior to ACCS ordering the temporary termination, Townsend cancelled seven out of eleven visitations for fear of infecting her children.