OPINION
{¶ 1} This is an appeal from an order of the juvenile court granting permanent custody of Appellant Edward Raynes, Sr.'s ten year old daughter, "H.R.", to Montgomery County Children's Services ("MCCS"). The court made like orders for the custody of Appellant's other two minor children, but those orders are not before us.
 {¶ 2} Relying on the holding of In re Williams,101 Ohio St.3d 398, 2003-Ohio-1466, Raynes argues on appeal that the juvenile court abused its discretion when, without holding a hearing, the court overruled Raynes's motion to appoint separate counsel to represent H.R. We agree.
 {¶ 3} Williams involved a certified conflict between a decision of the Geauga County Court of Appeals[1] and the decision of this court in In re Alfrey, Clark App. No. 01CA0083, 2003-Ohio-608. In Alfrey, we held that separate counsel need not be appointed to represent a minor in a permanent custody proceeding when a guardian ad litem recommends a disposition that conflicts with the minor's wishes.
 {¶ 4} In Williams, the Supreme Court rejected our holding in Alfrey and affirmed the holding of the Geauga County Court of Appeals that had reversed a permanent custody order because the juvenile court, without holding a hearing, denied a request to appoint separate counsel for a minor in that circumstance.Williams held:
 {¶ 5} "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." Id., Syllabus by the Court.
 {¶ 6} The circumstances which the Supreme Court addressed inWilliams arise when a guardian ad litem who is also appointed as the juvenile's attorney recommends a disposition in a permanent custody proceeding that conflicts with the juvenile's wishes. The juvenile court must then appoint independent counsel to represent the child, because "(the duty of a guardian ad litem to a ward [to recommend to the court what the guardian feels is in the best interest of the ward] and the duty of a lawyer to a client [to provide zealous representation] may be in fundamental conflict in a dual-representation situation.") Id., 403 quotingIn re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232.
 {¶ 7} As a predicate to any appointment of independent counsel, the juvenile court must determine whether a conflict actually exists between a guardian ad litem's recommended disposition and the child's wishes. The Supreme Court endorsed the view that the court should "make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id.
 {¶ 8} In the present case, the guardian ad litem, an attorney, advised the court that while H.R. wished to be adopted, she also wished to maintain some contact with her father, Appellant Raynes. Because such visitation would be at the option of H.R.'s adoptive parents and the guardian ad litem had recommended adoption, the guardian ad litem reported the matter to the court as a potential conflict. Appellant Raynes moved for independent counsel to be appointed to represent H.R., and the following colloquy ensued between the guardian ad litem and the court:
 {¶ 9} "MR. CAPIZZI: Your Honor, I don't see a conflict at all in either one of my reports or in the report of the transcript. [H.R.} simply says she would like to, at some point in time, visit. She's a child who is — if — if the totality of my current report is taken, absolutely does not want to live with her father.
 {¶ 10} "I — I have met with her as recently as yesterday to confirm that she does, in fact, want to be adopted. She says she occasionally would like to see her dad. I think, as her guardian, I can present that to the Court and make the Court aware of that. As long as I disclose her feelings, I don't think there's a conflict in my position." (T. Vol. II, p. 7).
 {¶ 11} * * *
 {¶ 12} [The Court]: "As it stands, the Court is weighing the factors involving the timing of the motions, the additional delay that would be caused by — in the case regarding hearing of the motions and the arguments presented by counsel. The GAL, as Mr. Capizzi, has worked with this family and the children for an extended period of time in this particular case. The Court is required to consider the expressed wishes of the child as part of the permanent custody determination. This can be done by the Guardian ad Litem expressing the child's wishes; and certainly it has to be expressed, and has been in this case.
 {¶ 13} "In this particular case, it's been represented by Mr. Capizzi that the child dolls (sic) not wish to live with the father and does wish to be adopted. As far as I'm concerned, this does not raise a conflict with the GAL's position, unless there's evidence that is presented to this court during this hearing to indicate otherwise.
 {¶ 14} "With regard to the visitation and the child wishing to have an occasional visit with the — with the father, quite frankly, the only way that that would happen and be in compliance with the child's wishes is if PPLA were granted. Well, the Court will consider PPLA as an option in this case and consider it in conjunction with the evidence that is presented, as well as the requirements in the statute — statute that exists with regard to PPLA can be granted. And so, the Court does not consider it a conflict in this matter.
 {¶ 15} "Quite frankly, although Mr. Capizzi withdrew his motion for permanent custody, his motion for permanent custody also listed, as an alternative, PPLA. So, I do not see a conflict with regard to Mr. Capizzi's continued representation." (T. Vol. II, pp. 29-30).
 {¶ 16} The court's comment concerning a motion for permanent custody that had been withdrawn apparently concerned a competing motion for permanent custody filed by Appellant Raynes. While the withdrawal ended any conflict between that motion and the motion for permanent custody filed by MCCS, it did not resolve the alleged conflict in the guardian ad litem's dual representation in that capacity and as H.R.'s attorney.
 {¶ 17} We do not question the guardian ad litem's representation that he could make the court aware of H.R.'s wishes. That is part of his duty as guardian ad litem. Nevertheless, as Williams pointed out, an attorney has a duty to do more than that. An attorney must provide zealous representation for his client. In this circumstance, that would involve making every legitimate effort to secure an order allowing H.R. to have continued contact with her father, which the guardian ad litem could not do consistent with his recommendation. The trial court erred when it stated that a conflict could be avoided and that duty fulfilled by the guardian ad litem's mere expression of the child's wishes to the court.
 {¶ 18} Neither was the conflict resolved by the prospect of a planned permanent living arrangement ("PPLA") which the court said it would consider. A PPLA could allow for the visitation H.R. said she desired. However, H.R. was entitled to zealous representation to persuade the court that it was in her best interest to order a PPLA. As it was, she lacked that benefit, to which she was entitled.
 {¶ 19} Under the rule of Williams, the court must determine whether a conflict exists by taking into account the age and maturity of the child. By affirming an appellate court judgment that had reversed for lack of a hearing, Williams implicitly endorsed the need for an in-camera interview of the child by the court in order to determine whether a conflict actually exists. We believe the juvenile court erred in failing to conduct such an interview in the present case.
 {¶ 20} When this issue was raised the juvenile court expressed concern that appointing independent counsel for H.R. would cause additional delay in the proceedings. It no doubt would, but the delay can be minimized. We held in In re R.E. D.L., Montgomery App. No. 21275, 2006-Ohio-1256, that appointment of counsel did not require the court to begin the proceedings anew when new counsel had an opportunity to review the prior proceedings and recall any witnesses that had testified. That allows counsel to focus on the particular dispositional issue involved, avoiding the delay a new proceeding would entail.
 {¶ 21} The assignment of error is sustained. The judgment of the juvenile court granting permanent custody to MCCS will be reversed, and the case remanded for further proceedings.
Wolff, J. And Donovan, J., concur.
[1] In re Williams, Geauga App. Nos. 2003-G-2498 and 2003-G-2499, 2003-Ohio-3550.