OPINION
{¶ 1} Appellant-petitioner Zuri Flippin appeals a decision of the Montgomery County Court of Common Pleas, Juvenile Division, which overruled her objections to the magistrate's decision wherein the parental rights of Zuri were terminated, and permanent custody of I.M. was awarded to Montgomery County Children's Services (hereinafter "MCCSB"). After the trial court adopted the magistrate's decision in a judgment entry filed *Page 2 
on December 6, 2006, Zuri filed a timely appeal with this Court on January 2, 2007.
 I {¶ 2} Initially it must be noted that although I.M. has other siblings, her custody determination is the sole subject in this appeal. This case began over ten years ago on March 10, 1993, when MCCSB filed a dependency claim for I.M. On November 30, 1993, the trial court found that I.M. was a dependent and ordered protective supervision of the minor child.
 {¶ 3} Based on allegations of domestic violence and child abuse in the home, MCCSB filed a motion requesting temporary custody of I.M. and her siblings on March 3, 2003. On March 25, 2003, the trial court sustained the motion and granted temporary custody of I.M. and her siblings to MCCSB. In an effort to reunify the children with Zuri, MCCSB developed a case plan aimed at helping her overcome certain issues in order that she could regain full custody of her children and appropriately care for them. Specifically, the case plan required Zuri to seek substance abuse treatment and counseling for domestic violence. The case plan also required that Zuri provide suitable housing and income for her children.
 {¶ 4} The record reflects, however, that Zuri did not comply with the requirements of her case plan. As a result, MCCSB filed a motion to extend temporary custody of I.M. and her siblings on November 25, 2003. The trial court agreed, and on April 30, 2004, it granted MCCSB's motion for an extension of temporary custody.
 {¶ 5} On June 16, 2004, MCCSB filed a motion for permanent custody of I.M. and her siblings due to Zuri's failure to comply with her case plan objectives. In the alternative, the motion provided that I.M. and her siblings be placed in the legal custody of a non-relative. *Page 3 
On January 19, 2005, a hearing was held in front of a magistrate wherein evidence was adduced that Zuri had not completed any of her case plan objectives, rendering reunification with her children impossible. Representatives from MCCSB, as well as I.M.'s guardian ad litem (GAL), recommended that MCCSB be granted permanent custody of the children.
 {¶ 6} On June 20, 2005, the magistrate filed a written decision awarding permanent custody of I.M. and her siblings to MCCSB. On June 30, 2005, Zuri filed her objections to the magistrate's decision in which she argued that: 1) MCCSB did not make a reasonable effort to prevent the removal of her children and make it possible for their return; 2) the magistrate erred in refusing to recuse himself once it became apparent that he had acted as GAL for Zuri's sister at some point in the past; 3) the magistrate erred in refusing to allow Zuri new counsel; and 4) the magistrate failed to appoint I.M. a new GAL or independent counsel when an alleged conflict arose regarding her wishes and the recommendations of the current GAL.
 {¶ 7} In a written decision and entry filed on April 20, 2006, the trial court overruled all of Zuri's objections with the exception of the objection regarding the magistrate's failure to appoint I.M. another GAL because of an alleged conflict of interest with the original GAL. The trial court remanded the action back to the magistrate for an in camera hearing with I.M. in order to determine her wishes prior to deciding whether a new GAL was necessary. After conducting the in camera interview with I.M., the magistrate determined that no conflict existed, and on October 23, 2006, granted permanent custody of I.M. to MCCSB. Zuri filed her objections to the magistrate's decision on November 7, 2006. On December 6, 2006, the trial court adopted the decision of the magistrate which awarded permanent *Page 4 
custody of I.M. to MCCSB, thereby terminating Zuri's parental rights.
 {¶ 8} It is from this judgment which Zuri now appeals.
 II {¶ 9} Zuri's first assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN FAILING TO APPOINT A NEW ATTORNEY OR GUARDIAN AD LITEM FOR THE CHILD."
 {¶ 11} Pursuant to Civ. R. 53(E)(3), a party who disagrees with a magistrate's proposed decision must file objections to said decision. When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate. Breece v. Breece (Nov. 5, 1999), Darke App. No. 99-CA-1491;Seagraves v. Seagraves (Aug. 25, 1995), Montgomery App. Nos. 15047 and 15069. In accordance with Civ. R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. Dayton v. Whiting
(1996), 110 Ohio App.3d 115, 118, 673 N.E.2d 671. Thus, the trial court's standard of review of a magistrate's decision is de novo.
 {¶ 12} An "abuse of discretion" standard, however, is the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision. Claims of trial court error must be based on the actions taken by the trial court, itself, rather than the magistrate's findings or proposed decision. When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable. Proctor v.Proctor (1988), 48 Ohio App.3d 55, 60-61, 548 N.E.2d 287. Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the *Page 5 
abuse of discretion standard. Whiting, supra.
 {¶ 13} An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Berk v. Mathews (1990), 53 Ohio St.3d 161, 169,559 N.E.2d 1301.
 {¶ 14} In her first assignment, Zuri contends that the trial court erred when it failed to appoint a new GAL or independent counsel for I.M. when an alleged conflict came to light with respect to I.M.'s wishes and the recommendations of her original GAL regarding her custody.
 {¶ 15} In In re Williams (2004), 101 Ohio St.3d 398, 805 N.E.2d 1110,2004-Ohio-1500, the Ohio Supreme Court held that a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and is entitled to independent counsel under certain circumstances. "[C]ourts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id. at ¶ 17.
 {¶ 16} In In re H.R. (March 31, 2006), Montgomery App. No. 21274,2006-Ohio-1595, we held that a juvenile court was required to hold an in camera interview of the child in order to determine whether a conflict existed between the GAL's recommended disposition and the child's wishes, such that separate counsel for the child was required.
 {¶ 17} In the instant case, the GAL testified that I.M. had expressed a desire to be *Page 6 
placed with Rhonda Stokes, rather than be placed in the permanent custody of the MCCSB. However, the GAL also testified that I.M. stated to him that she would also like to be adopted by her foster family. The GAL provided pertinent testimony in the following exchange:
 {¶ 18} "GAL: Well, I don't believe there is a conflict. As my Guardian's report reflects that [I.M.] has kind of been on the fence about what she wants. She has a slight preference for legal custody to Rhonda Stokes. But, in the alternative, she also wanted to stay with her current foster family."
 {¶ 19} While the GAL had initially indicated in his report that he felt that I.M. should be placed with Rhonda Stokes, the GAL changed his mind at the end of the custody hearing and stated that permanent custody of I.M. should be awarded to MCCSB. He also stated that it was a "close call" for I.M., but she actually preferred to stay with her foster family and let them adopt her. Based on this testimony, the magistrate found that no conflict existed between the GAL and I.M. regarding where she preferred to be placed.
 {¶ 20} The trial court, however, found Zuri's objection in this regard to be meritorious and to warrant an in camera hearing with the magistrate in order to determine if such a conflict existed whereby I.M. would be entitled to independent counsel. It is undisputed that during the interview, I.M. still did not state a preference as to where she wanted to live. Without a clearly articulated preference by I.M., we agree with the trial court that no conflict existed between the GAL and I.M. that would warrant the appointment of independent counsel to protect I.M.'s placement interests. Thus, the trial court did not err when it adopted the magistrate's decision finding that the GAL's final recommendation to award permanent custody to MCCSB did not conflict with I.M.'s wishes concerning her *Page 7 
residential placement.
 {¶ 21} Zuri's first assignment is overruled.
 III {¶ 22} Zuri's second assignment of error is as follows:
 {¶ 23} "THE TRIAL COURT ERRED BY FINDING THAT THE AGENCY HAD MADE REASONABLE EFFORTS TO ELIMINATE THE REMOVAL OF THE CHILDREN FROM THE HOME AND TO MAKE IT POSSIBLE FOR THEM TO RETURN."
 {¶ 24} In her second assignment, Zuri contends that the trial court erred when it found that the magistrate correctly determined that MCCSB made reasonable efforts to prevent the removal of I.M. from her home and to make it possible for the child to return at some point.
 {¶ 25} "The right to parent one's children is a fundamental right.Troxel v. Granville (2000), 530 U.S. 57, 66, 120 S.Ct. 2054; In reHayes (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. However, government has broad authority to intervene to protect children from abuse and neglect. R.C. 2151.01. When the State intervenes to protect a child's health or safety, the state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed are called `reasonable efforts.' Will L. Crossley,Defining Reasonable Efforts: Demystifying the State's Burden UnderFederal Child Protection Legislation (2003), 12 B.U. Pub. Int. L.J. 259, 260." In re CF. (2007),113 Ohio St.3d 73, 78, 862 N.E.2d 816, 821.
 {¶ 26} The Supreme Court of Ohio went on to state in In re CF.:
 {¶ 27} "[N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, *Page 8 
`whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal `to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413 (D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D) — the `12 months out of 22 rule' — `[i]f reasonable efforts to return the child to the child's home are required under section 2151.419' and the agency has not provided the services required by the case plan." Id.
 {¶ 28} Pursuant to R.C. § 2151.414(E)(1), a child may be permanently placed with the agency when, notwithstanding reasonable case planning and diligent efforts by the agency, the parent or parents fail to remedy the problems that caused the removal of the child. A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In re Weaver (1992),79 Ohio App.3d 59, 63, 606 N.E.2d 1011.
 {¶ 29} When a trial court is considering whether the agency made reasonable efforts to prevent the removal, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Brewer (Feb. 12, 1996), Belmont App. No. 94-B-28. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. § 2151.419(A)(1). *Page 9 
 {¶ 30} MCCSB implemented a case plan to assist Zuri in remedying the problems which caused the removal of her children. Zuri, however, failed to complete any portion of her case plan. Zuri admitted that she had a substance abuse problem that has persisted for approximately twenty (20) years. Although MCCSB referred Zuri to multiple substance abuse treatment programs, she failed to complete any of the programs. In March of 2003, Zuri was removed from a Consumer Advocacy Program due to poor attendance caused by her continuing substance abuse.
 {¶ 31} MCCSB also referred to Zuri to Nova House, Turning Point, Women's Recovery, and Sojourner. All of these programs are designed to help women who have been victims of domestic abuse and have substance abuse problems of their own. Each program was designed to assist in Zuri's recovery. Although Zuri was referred to each one of these programs, she either failed to complete the program or never enrolled at all.
 {¶ 32} Zuri admitted that she was diagnosed as having bi-polar disorder and that she self-medicated with marijuana to alleviate her symptoms. On her own initiative, Zuri enrolled herself in Eastway in March of 2003, to help her cope with her disorder. Shortly thereafter, however, Zuri admitted that she dropped out of the program and stopped taking the anti-depressant Zoloft, that she had been prescribed.
 {¶ 33} MCCSB attempted to assist Zuri in securing proper housing so that she could start to maintain a stable environment for her children. MCCSB referred Zuri to Section 8 housing, but Zuri was ineligible because she owed a back bill to Section 8. Evidence was adduced at trial that Zuri's involvement in the Sojourner program could have provided some assistance with her housing dilemma, but Zuri chose not to participate in that program as well. *Page 10 
 {¶ 34} MCCSB arranged for Zuri to have visitation with her children twice a week. Zuri, however, chose to attend said visitation sporadically, at best. Between the months of August and November of 2004, Zuri did not attend even one of her scheduled sessions with her children. She blamed her sporadic visitation on her ongoing substance abuse, stating that she did not want her children to see her in that condition.
 {¶ 35} After MCCSB referred Zuri to Artemis House for domestic abuse, she did attend the scheduled sessions and eventually received her certificate of completion from Artemis. While this in itself seems to be a step in the right direction, Zuri later moved back in with her husband who had beaten her in the past, and the domestic violence resumed.
 {¶ 36} From the record, it is abundantly clear that MCCSB made every reasonable effort to help Zuri get her life back in order so that she could regain full custody of I.M. and the rest of her children. The record reflects a failure on Zuri's part to comply with her case plan objectives that can be attributed to no one but Zuri, herself.
 {¶ 37} Zuri's second assignment of error is overruled.
 IV {¶ 38} Zuri's third assignment of error is as follows:
 {¶ 39} "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE MAGISTRATE WAS PROPER IN REFUSING TO RECUSE HIMSELF WHEN IT WAS DISCOVERED THAT HE WAS THE GUARDIAN AD LITEM FOR APPELLANT'S SISTER."
 {¶ 40} In her third assignment, Zuri contends that because the magistrate had acted as her sister's guardian ad litem, he should have recused himself from any further involvement in the case to avoid the appearance of impropriety.
 {¶ 41} Removal of a magistrate is within the sound discretion of the trial judge who *Page 11 
had referred the matter to the magistrate and must be sought by a motion filed with the trial court. In re Disqualification of Wilson (1996),77 Ohio St.3d 1250, 674 N.E.2d 360; In re Disqualification of Light (1988),36 Ohio St.3d 604, 522 N.E.2d 458. We review the trial court's decision in this regard under an abuse of discretion standard.
 {¶ 42} As the State correctly notes, there is a presumption that the trial judge is not biased or prejudiced, and the party alleging the bias or prejudice must present evidence to overcome the presumption of integrity. Okocha v. Fehrenbacher ( 1995), 101 Ohio App.3d 309, 322. In the instant case, evidence was adduced which established that the magistrate had previously acted as a GAL to Zuri's sister, Fikirisha Morrell, in an unrelated case. Other than pointing out this solitary fact, Zuri's counsel did not offer any other evidence or specific facts at the hearing that affirmatively demonstrated any bias or prejudice on the magistrate's part. Thus, we find no abuse of discretion in the trial court's decision to affirm the decision of the magistrate denying Zuri's oral motion for him to recuse himself from the proceedings.
 {¶ 43} Zuri's third assignment of error is overruled.
 V {¶ 44} Zuri's fourth and final assignment of error is as follows:
 {¶ 45} "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE MAGISTRATE WAS PROPER IN REFUSING TO REMOVE APPELLANT'S ATTORNEY AND FAILING TO QUESTION APPELLANT ABOUT HER REQUEST FOR A NEW ATTORNEY."
 {¶ 46} In her final assignment, Zuri contends that the trial court erred when it found that the magistrate acted properly in refusing to remove her counsel after said counsel was threatened with contempt after a heated cross-examination of a witness. After MCCSB *Page 12 
rested its case, Zuri's counsel made a motion for a continuance and requested that he be removed from the case because his representation of his client had been compromised by the magistrate's warning of contempt. Upon the magistrate's denial of his motion, Zuri's counsel informed the magistrate that his client wished to have a new attorney and that he could no longer represent her in an effective manner. The magistrate denied this motion, as well. Zuri argues that the magistrate had a duty to inquire with respect to her complaints concerning her attorney's representation of her interests. She asserts that the failure of the magistrate to engage in such an inquiry amounts to an abuse of discretion. We disagree.
 {¶ 47} When the magistrate directly addressed Zuri concerning her case, she did not articulate any dissatisfaction with her attorney. In fact, she informed the court to move forward with the case. It is clear from the record that counsel's oral motion for recusal was interposed for delay. The record reveals that counsel's actions in this regard were nothing more than a ploy to obtain a continuance that had just been denied. There is no indication that Zuri's counsel's performance fell below any objective standard. Quite the contrary, counsel vigorously cross-examined all of MCCSB's witnesses. We agree that under these circumstances and without any explanation as to why a new attorney was necessary, these actions were clearly designed to delay the magistrate's judgment regarding the permanent custody of the children. Thus, the magistrate did not abuse his discretion when he denied Zuri's motion for a continuance.
 {¶ 48} Zuri's fourth and final assignment of error is overruled.
 VI {¶ 49} All of Zuri's assignments of error having been overruled, the judgment of the trial court is affirmed. *Page 13 
BROGAN, J. and VALEN, J., concur.
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1