DECISION AND JUDGMENT ENTRY
{¶ 1} Athens County Children Services (ACCS) appeals the trial court's judgment denying its permanent custody motion. ACCS argues that the trial court's judgment is against the manifest weight of the evidence because clear and convincing evidence shows that awarding it permanent custody would serve the children's best interests. ACCS further contends that the trial court improperly required it to prove, by clear and convincing evidence, that the children could not be reunited with their father. ACCS additionally asserts that the trial court failed to enter proper Civ.R. 52 findings of fact and conclusions of law. We disagree with all of ACCS's arguments. The record contains competent and credible evidence to support the trial court's decision that permanently severing the familial relationship would not serve the children's best interests. Additionally, the trial court's findings of fact and conclusions of law sufficiently state the rationale for its decision so as to enable this court to meaningfully review that decision. Thus, we affirm the trial court's judgment.
 {¶ 2} In February of 2002, ACCS filed complaints alleging the Cunningham children (Brittany, born July 7, 1989; Bethany, born November 3, 1992; and Shawn, born January 27, 1999) to be neglected and dependent children. ACCS claimed that: (1) the father sent a letter to ACCS caseworker Mandy Reuter, stating that he was leaving the family and asking Reuter to care for his children; (2) the family did not have a source of income; (3) Athens County Sheriff Deputy Cheryl Garvin reported that the home was filthy; (4) the mother admitted to using marijuana in the home; (5) Brittany and Bethany have missed "numerous days of school and there is very little supervision in the home;" and (6) the children do not receive proper medical attention. The trial court subsequently awarded ACCS temporary custody of the children.
 {¶ 3} In April of 2002, the court adjudicated the children neglected and dependent children, and in May of 2002, the court again awarded ACCS temporary custody of the children.
 {¶ 4} In April of 2003, ACCS filed a permanent custody motion. In July and August of 2003, the trial court held a hearing on ACCS's motion. The evidence at the hearing revealed that both the mother and the father love their children and wish to have the children returned to them. However, the mother, by written letter, conceded that she presently is unable to care for the children. She and the father divorced in December of 2002 and she currently lives in Florida. The father expressed his desire to have the children returned to him. He believes that he has improved his life since ACCS's initial complaint. He has undergone substance abuse counseling and has been somewhat successful in his attempt to terminate his marijuana use. He has acquired a home that he asserts has sufficient room for the three children, and he has obtained a job.
 {¶ 5} The court interviewed the two older children, Brittany and Bethany. Brittany expressed some reservations about being returned to her father's care, but Bethany stated that she would like to be reunited with her father and siblings in the same household. Despite some initial adjusting to their removal from their parents' home, all of the children have progressed while in foster care.
 {¶ 6} On September 23, 2003, the trial court denied ACCS's motion for permanent custody. The court found that ACCS's "primary motivating factor" for filing the permanent custody motion "is the undisputed fact that these three children have been in the temporary custody of [ACCS] for twelve or more months of a consecutive twenty-two month period immediately preceding the filing of the motion and the hearing thereon." The court noted that the father (1) "continues to assert that he is willing and able to provide the home and the parenting necessary to raise his children," and (2) "underwent substantial substance abuse counseling over a significant period of time as a demonstration of his willingness to make substantial life changes in order to regain custody of his children." The court further found "[o]ther important positive factors that support [the father]'s position that his parental rights * * * should not be terminated": (1) he has maintained for over seven months "near fulltime employment"; and (2) he has "obtained modest housing which may prove adequate for attempts at reunification."
 {¶ 7} The court also found that Brittany and Bethany "love their father and have uncertainty about what life might be like living with him without their mother." The court determined that the children "would benefit from stability and permanency," but concluded that the evidence failed to clearly and convincingly show that the children could not be reunited with their father. The court observed that since the parents' December of 2002 divorce, the children have not had a single visitation with the father in his home. The court stated: "This Court cannot assume that [the father] alone was responsible for all the issues that led to the children's removal and unsuccessful reunification while [the parents] lived together. While the agency has provided well for the children and mapped out a plan for reunification of the whole family, it does not appear that serious consideration was given to reuniting these children with their father alone. * * * * The case plan was never amended to attempt a placement with [the] father."
 {¶ 8} The court recognized that the father "is not perfect" and that ACCS has legitimate concerns about the father's attitude toward substance abuse counseling. The court ultimately decided: "In weighing the evidence in light of the best interest factors * * * the Court cannot conclude that the best interest of the children will be served by terminating the rights of their parents." The court stated that "[the father] deserves an opportunity to enter into a case plan which will allow the Court to determine the feasibility of reuniting the children with their father." The court thus denied ACCS's permanent custody motion and ordered the children to remain in ACCS's temporary custody.
 {¶ 9} ACCS appealed the trial court's judgment and raises the following assignments of error: "First Assignment of Error — The trial court erred as a matter of law when the court denied appellant's motion for permanent custody because appellant had not proven by clear and convincing evidence that the children could not be reunited with their father. Second Assignment ofError — The trial court erred by denying appellant's Civil Rule 52 motion for findings of fact and conclusions of law. ThirdAssignment of Error — The trial court's denial of appellant's motion for permanent custody was against the manifest weight of the evidence."
 I {¶ 10} ACCS's first and third assignments of error both concern the standard for awarding permanent custody. Therefore, we will jointly address them.
 {¶ 11} In its first assignment of error, ACCS contends that the trial court erred by denying its permanent custody motion. Specifically, ACCS argues that the court erred by requiring it to show, by clear and convincing evidence, that the children could not be reunited with their father. ACCS contends that R.C.2151.414 imposes no such requirement, but instead mandates a trial court to award permanent custody when the children have been in a children services agency's custody for twelve or more months of a consecutive twenty-two month period and when the award of permanent custody would serve the children's best interests.
 {¶ 12} In its third assignment of error, ACCS argues that the evidence shows that awarding it permanent custody would serve the children's best interest. ACCS strongly emphasizes that the children have been in its custody for well over twelve months and that continuing to have the children in its temporary custody will not give the children the stability that they need.
 {¶ 13} Clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as: "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 103-104, 495 N.E.2d 23; see, also, State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. In reviewing whether clear and convincing evidence supports a trial court's decision, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel,55 Ohio St.3d at 74. If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
 {¶ 14} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the Court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273,1276: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of proffered testimony."
 {¶ 15} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156,556 N.E.2d 1169. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034, quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58. Thus, the state may seek to terminate parental rights when the child's best interest demands such termination because of parental unsuitability.
 {¶ 16} R.C. 2151.413(D)(1) requires a public children services agency that has had temporary custody of a child for twelve or more months of a consecutive twenty-two month period to file a motion requesting permanent custody of the child. R.C.2151.414(A)(1) then requires the trial court to hold a hearing. The primary purpose of the hearing is to allow the trial court to determine whether permanently terminating the parental relationship and awarding permanent custody to the agency would serve the child's best interests. See R.C. 2151.414(A)(1).
 {¶ 17} R.C. 2151.414(B)(1)(d) permits a trial court to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period. Under R.C. 2151.414(B)(1)(d), the court need not find that the child cannot or should not be placed with either parent within a reasonable time. See In re Decker, Athens App. No. 00CA42, 2001-Ohio-2380; In re Moody (Aug. 7, 2000), Athens App. No. 99CA63.
 {¶ 18} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(e)(7) to (11) apply.[1]
 {¶ 19} While we agree with ACCS that R.C. 2151.414 does not explicitly require it to prove that the children cannot be reunited with the parents, we disagree with the agency that a trial court may never consider this as a factor in deciding a permanent custody motion. Additionally, under the R.C. 2151.414
best interest factors, the trial court must consider the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. Here, the court essentially decided that the evidence failed to show that the children could not be afforded a legally secure permanent placement without awarding ACCS permanent custody. The court found that the father has made progress and deserves a chance to show that he can provide the children with a legally secure permanent placement. Although ACCS complains that the father has already had sufficient time to demonstrate that he can provide the children with such a placement, the trial court found that placement with the father is not hopeless. The court stated that ACCS has not provided the father with his own case plan that contains a goal of reunifying the children with him. The court noted that the previous case plans addressed both the mother's and the father's shortcomings, and that the parties' divorce may have eliminated some of those shortcomings. Essentially, the trial court concluded that preserving the familial bond would most serve the children's best interests.
 {¶ 20} We also disagree with ACCS that the trial court should have awarded it permanent custody due to the length of time that the children have been in its temporary custody. Simply because a children services agency files a permanent custody motion pursuant to R.C. 2151.414(B)(1)(d) does not automatically require the trial court to grant the motion. While the goal of that statutory provision is to discourage keeping children for prolonged periods of time in a children services agency's custody, the more important factor is the children's best interests. If the court determines that awarding permanent custody to the agency would not serve the children's best interests, the court must deny the permanent custody motion, regardless of the length of time that the children have been in the agency's custody. While the length of time that the children have been in a children service's agency may be a relevant and important factor, the children's best interest remains the polestar of custody determinations. In re Cunningham, supra.
 {¶ 21} In this case, the children presently have been in ACCS's custody for nearly two years, yet the court found that permanently severing their parental relationships and awarding ACCS permanent custody would not serve their best interests. Instead, the court determined that attempting reunification with their father so as to preserve the familial relationship would serve their best interests. The court found that in light of the parents' divorce, ACCS should provide the father additional time to show that he is able to provide the children with a stable and nurturing home. While denying ACCS's permanent custody motion serves to delay the children's ability to be placed in a permanent stable environment, the record contains ample evidence to support the trial court's factual finding that permanently terminating their relationship with their father now would not serve their best interests. In other words, the trial court's decision, i.e., ACCS did not carry its burden of proof to show by clear and convincing evidence that permanent placement was in the children's best interest, is not against the manifest weight of the evidence.
 {¶ 22} Accordingly, we overrule ACCS's first and third assignments of error.
 II {¶ 23} In its second assignment of error, ACCS asserts that the trial court erred by denying its Civ.R. 52 request for findings of fact and conclusions of law.
 {¶ 24} R.C. 2151.414(C) requires a juvenile court, upon request of either party, to file a written opinion setting forth its findings of fact and conclusions of law regarding a permanent custody decision. Likewise, Civ.R. 52 requires the trial court, upon timely request, to issue findings of fact and conclusions of law.
 {¶ 25} The purpose of separately stated findings of fact and conclusions of law is to enable the reviewing court to determine the existence of assigned error. In re Adoption of Gibson
(1986), 23 Ohio St.3d 170, 492 N.E.2d 146; In re Fountain (Feb. 24, 2000), Cuyahoga App. No. 76650, citing Davis v. Wilkerson
(1986), 29 Ohio App.3d 100, 101, 503 N.E.2d 210. Civ.R. 52 expressly provides that an opinion or memorandum of decision can satisfy its requirements, if the decision contains separately stated findings of fact and conclusions of law. See Stone v.Davis (1981), 66 Ohio St.2d 74, 84, 419 N.E.2d 1094. A trial court's decision reciting various facts and a legal conclusion satisfies Civ.R. 52 when, together with other parts of the trial court's record, the decision forms an adequate basis upon which to decide the legal issue presented upon appeal. Id. at 85; Inre Schoeppner (1976), 46 Ohio St.2d 21, 23, 345 N.E.2d 608; see, also, Abney v. Western Res. Mut. Cas. Co. (1991),76 Ohio App.3d 424, 431, 602 N.E.2d 348. Thus, when a party argues that the trial court's findings are insufficient, a reviewing court must determine whether the trial court substantially complied with the procedural rule requiring the court to make separate findings of fact and conclusions of law. Brandon/Wiant Co. v.Teamor (1999), 135 Ohio App.3d 417, 423, 734 N.E.2d 425.
 {¶ 26} In this case, ACCS timely requested findings of fact and conclusions of law. In response, the trial court, referring to its prior decision and specifically citing page numbers, declined ACCS's request to issue further factual findings and conclusions of law. While the court's decision is not ideal,[2] we nonetheless find that the trial court's decision, combined with the transcript of the permanent custody hearing and the transcript of the court's in camera interview with the two girls, forms an adequate basis for the trial court's ruling and for our review. Cf. In re Lewis, Athens App. No. 03CA12, 2003-Ohio-5262. The trial court substantially complied with Civ.R. 52. Furthermore, assuming the court erred, such error is harmless. See Dovetail Const. Co., Inc. v. Baumgartel (Sept. 25, 2001), Washington App. No. 00CA2.
 {¶ 27} Accordingly, we overrule ACCS's second assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
Kline, P.J. Abele, J., concur in Judgment and Opinion.
[1] R.C. 2151.414(E)(7) to (11) provide: "(7) The parent has been convicted of or pleaded guilty to one of the following: (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense; (b) An offense under section 2903.11, 2903.12, or2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense; (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense; (d) An offense under section 2907.02,2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense; (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section. (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body. (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent. (10) The parent has abandoned the child. (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
[2] Especially in matters involving custody of children, we encourage trial courts, when responding to proper Civ.R. 52 requests, to address and apply the statutory factors.