OPINION
{¶ 1} Appellant Jonathan Greathouse appeals the decision of the Fairfield County Court of Common Pleas, Family Court Division, which granted permanent custody of his daughter to Appellee Fairfield County Children's Services ("FCCS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} In May 2003, appellant was established as the legal father of Destiny Greathouse, born in 1997. Appellant and the child's mother, Connie Brehm,[1] have never been married, but have lived together from time to time.
 {¶ 3} On March 18, 2003, FCCS filed a complaint alleging Destiny was a dependent child. On March 27, 2003, the child was placed in the temporary custody of FCCS. The trial court found Destiny to be a dependent child on May 15, 2003, and temporary custody with FCCS was maintained. On November 13, 2003, FCCS filed a motion for permanent custody of Destiny.
 {¶ 4} A trial on the permanent custody complaint was held on May 18, 2004 and May 20, 2004. A judgment entry granting permanent custody, with findings of fact and conclusions of law, was filed on August 19, 2004. Appellant filed a notice of appeal on September 17, 2004, and herein raises the following three Assignments of Error:
 {¶ 5} "I. It was against the manifest weight of the evidence for the trial court to find that destiny greathouse could not be placed with her father, jonathon greathouse, in a reasonable time.
 {¶ 6} "II. It was against the manifest weight of the evidence for the trial court to find it was in the best interest of destiny greathouse to be placed in the permanent custody of Fairfield County children's services.
 {¶ 7} "III. The failure of Fairfield County children's services to make a reasonable effort to reunify Jonathon Greathouse, with his daughter, destiny greathouse, violated Mr. Greathouse's right to due process of law under Article I, Sections 10 and 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.
 I. {¶ 8} In his First Assignment of Error, appellant contends the trial court erred in concluding that Destiny could not be placed with appellant within a reasonable time or should not be placed with appellant. We disagree.
 {¶ 9} R.C. 2151.414(E) sets forth the factors the trial court is to consider when determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. In the case sub judice, the following factors were found pertinent by the trial court:
 {¶ 10} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 11} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 " * * * {¶ 12} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *.
 " * * * {¶ 13} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 " * * * {¶ 14} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 " * * * {¶ 15} "(16) Any other factor the court considers relevant."
 {¶ 16} In the case sub judice, the chief concerns of FCCS in relation to appellant were his alcohol dependency, the influence upon him of other persons engaging in drug or alcohol abuse, and his domestic violence history. To his credit, appellant has completed an anger management program and, according to his Alcoholics Anonymous counselor, has made much progress in battling his alcoholism. However, appellant failed to appear for court-ordered drug/alcohol screens on at least six occasions, and was arrested for driving while intoxicated in July 2003. Appellant has continued to maintain a relationship with Destiny's maternal grandparents, the Brehms, despite their purported ongoing drug and alcohol use. Tr. I at 86-87. Shortly before the evidentiary hearing, appellant borrowed the Brehms' vehicle, even though he is under a suspended license. Additionally, despite the completion of the anger management program, appellant has since engaged in domestic violence on two occasions. In September 2003, for example, appellant went to see Destiny's mother and ended up engaging in a physical fight with her and a male friend who was visiting at the time.
 {¶ 17} The record also reveals a lack of consistency in appellant's contact with Destiny. From June 19, 2003 until September 15, 2003, appellant did not visit with the child. From January 16, 2004 until March 16, 2004, appellant did not visit due to his jail incarceration. In addition, he has never paid child support for Destiny. Likewise, ongoing services worker Tracy Manning testified that appellant "has not really been an active participant * * * in caring for Destiny's handicaps." Tr. I at 96.
 {¶ 18} Upon a review of the evidence in light of the above statutory factors, we find the record contains clear and convincing evidence to support the trial court's determination. Accordingly, the trial court did not err when it determined Destiny could not be placed with appellant within a reasonable time or should not be placed with appellant.
 {¶ 19} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 20} In his Second Assignment of Error, appellant argues the trial court erred in concluding that a grant of permanent custody to FCCS was in Destiny's best interest. We disagree.
 {¶ 21} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 22} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 23} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 24} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 25} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 26} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 27} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 28} The record reveals that Destiny suffers from speech and motor skills delays and already wears glasses. She was due to be enrolled in kindergarten in the fall of 2004, as she was approaching age seven; however, she did not meet the prescreen requirements for kindergarten. Tr. I at 90. In 2000, she was taken in for dental surgery at FCCS's behest to treat numerous cavities. Tr. I at 93. The ongoing services worker, Tracy Manning, indicated that Destiny was making "excellent progress" in foster care:
 {¶ 29} "She has, like I said, she's learned to cut a square. She's finally learned to cut a square. She is, her speech has improved vastly. Um, she continues to work with the occupational therapist at school, who every, every time that he meets with her he says that he notices an improvement with her therapy skills. Teachers are impressed with her language skills. It's apparent when you speak to Destiny that she speaks in a much more clear tone. Um, growth, she's had, she's had a growth spurt. Her, her hair has changed; it's thicker; it's fuller. Um, she's grown taller; she's much more active." Tr. I at 94.
 {¶ 30} Appellant suggests the trial court focused inordinately on the bond between the foster parents and Destiny, pointing out the guardian ad litem's recollection that Destiny "likes reading with dad and doing puzzles and that kind of thing and she enjoys that very much." Tr. II at 234. However, the guardian ad litem still recommended permanent custody to FCCS. We also note ongoing services worker Tracy Manning testified that Destiny had asked her mother if they could "run away together and hide from dad." Tr. I at 209. Destiny is aware of the domestic violence issues involving appellant, and told Manning she did not want to live with appellant unless her mother was present. Manning also testified that Destiny seemed to be "very bonded" with her foster family. Tr. I at 95.
 {¶ 31} Appellant additionally argues, in light of R.C. 2151.414(D)(4), that appellant's current home was never inspected by FCCS and he was allegedly never considered for reunification.[2] In support he directs us to In re Cunningham, Athens App. No. 03CA26, 2004-Ohio-787, for the proposition that FCCS should have given him greater consideration for reunification with Destiny. However, Cunningham, which addressed an appeal by Athens County Children Services of the denial of a permanent custody motion, simply quotes the trial court's decisive language that "[the father] deserves an opportunity to enter into a case plan which will allow the Court to determine the feasibility of reuniting the children with their father." Id at ¶ 8. The facts in Cunningham also indicate that the father was the sole custodian of the children at the time of agency removal. Id. at ¶ 2, ¶ 4. Furthermore, the Cunningham
court agreed that R.C. 2151.414 "does not explicitly require [the agency] to prove that the children cannot be reunited with the parents * * *." Id. at ¶ 19. Accordingly, we are unpersuaded by appellant's attempted reliance on Cunningham.
 {¶ 32} We have frequently noted "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children
(Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller (1988), 37 Ohio St.3d 71, 75,523 N.E.2d 846.
 {¶ 33} In the case sub judice, upon review of the record and the extensive findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of Destiny to FCCS was made in the consideration of the child's best interests and did not constitute an abuse of discretion.
 {¶ 34} Appellant's Second Assignment of Error is overruled.
 III. {¶ 35} In his Third Assignment of Error, appellant argues he was deprived of his constitutional right to due process by the alleged failure of FCCS to make a reasonable effort to reunify him with Destiny.
 {¶ 36} It is well-established that failure to raise objections to proceedings on constitutional grounds results in a waiver of such assignments of error. In re Willis, Coshocton App. No. 02CA15, 2002-Ohio-6795, ¶ 10, citing State v. Awan (1986), 22 Ohio St.3d 120,489 N.E.2d 277. Our review of the record does not reveal that appellant raised a state or federal due process error at the trial court level. Accordingly, we find appellant has waived his present argument.
 {¶ 37} Appellant's Third Assignment of Error is therefore overruled.
 {¶ 38} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Fairfield County, Ohio, is hereby affirmed.
Wise, J. Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Fairfield County, Ohio, is affirmed.
Costs to appellant.
[1] Connie has separately appealed under case number 04-CA-56.
[2] Appellant proposes that FCCS consistently intended reunification with Destiny's mother, not him. However, we find this claim questionable in light of Manning's entire testimony. See Tr. II at 40.