OPINION
{¶ 1} Tasha F. appeals from a judgment of the Miami County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her sons, B.F. and D.F., to the Miami County Children's Services Board ("MCCSB"). The children's fathers did not contest the permanent custody *Page 2 
motion, and they have not appealed the trial court's judgment. For the following reasons, the judgment will be affirmed.
 {¶ 2} Tasha is the mother of B.F., born in May 2005, and D.F., born in April 2006. (Tasha also has two older daughters who are being raised by their father, and they are not involved in this case.) In December 2006, MCCSB became involved with the family, because Tasha was incarcerated in the Montgomery County jail for violating her probation on a grand theft charge. Prior to this time, D.F. had resided at eleven different residences; B.F. had resided in thirteen. On December 28, 2006, Tasha voluntarily gave MCCSB temporary custody of the children, and they were placed in foster care. MCCSB created a case plan for Tasha with the goal of reunification of the family. MCCSB subsequently filed a motion for temporary custody.
 {¶ 3} Tasha was released from jail in January 2007, and she attended an initial hearing on MCCSB's motion. However, Tasha was again arrested on a drug charge in March 2007, and she was not present for a second hearing. Tasha also did not appear for a third dispositional hearing in April 2007, at which time Tasha was incarcerated at the Ohio Reformatory for Women. On April 3, 2007, the trial court determined that D.F. and B.F. were dependent children, and on May 1, 2007, the court granted temporary custody of the children to MCCSB.
 {¶ 4} A review hearing was held on June 27, 2007. At that time, no progress had been made on the case plan.
 {¶ 5} On September 19, 2007, MCCSB moved for permanent custody of D.F. and B.F. The agency indicated that Tasha had been sentenced to the Ohio Reformatory for Women in Marysville and was not due to be released until June 6, *Page 3 
2008, at which time the children would be in MCCSB's custody for eighteen months. The agency stated that Tasha has not been able to complete her case plan, and both fathers had indicated that they did not want custody of their respective sons.
 {¶ 6} After one continuance, a hearing on the motion for permanent custody was held on January 31, 2008. At her request, Tasha did not attend the hearing. The magistrate found that D.F. and B.F. could not be placed with Tasha within a reasonable period of time and that it was in the best interest of the children to grant permanent custody to MCCSB. Tasha raised timely objections to the magistrate's decision. On April 28, 2008, the trial court overruled the objections and adopted the magistrate's decision.
 {¶ 7} Tasha raises two assignments of error on appeal.
 "THE TRIAL COURT'S DECISION IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 8} In her first assignment of error, Tasha claims that the trial court's decision to terminate her parental rights and to grant permanent custody to MCCSB was not based on clear and convincing evidence. Although Tasha acknowledges that she was incarcerated during much of the time that MCCSB's complaint and motion for permanent custody were pending, she asserts that the trial court ignored her efforts to work on her case plan while incarcerated. Tasha argues that the trial court could have extended the temporary custody and provided her an opportunity to work on her case plan after her release from prison.
 {¶ 9} In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); In re *Page 4 J.R., Montgomery App. No. 21749, 2007-Ohio-186, at ¶ 9. However, the court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re ForrestS. (1995), 102 Ohio App.3d 338, 345, 657 N.E.2d 307; Cross v.Ledford (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 10} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(a), the court may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the children services agency, (2) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and (3) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 11} In evaluating whether a child can be placed with either parent within a reasonable time, a trial court must comply with R.C. 2151.414(E). R.C. 2151.414(E) provides, in pertinent part:
 {¶ 12} "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear *Page 5 
and convincing evidence, at a hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 13} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 14} " * * *
 {¶ 15} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"
 {¶ 16} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of *Page 6 
the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.
 {¶ 17} The factors in R.C. 2151.414(E)(7) through (11) include: convictions of various crimes like homicide, assault and child endangerment; withholding food or medical treatment from a child; abandonment of the child; placing the child at substantial risk of harm two or more times by drug or alcohol abuse and refusal of treatment; and involuntary termination of parental rights with regard to a sibling. Although Tasha had been charged with child endangerment regarding B.F. and D.F., there is no evidence that she was convicted of that offense. Therefore, none of these factors appear to apply in this case.
 {¶ 18} Bob Wheelock, caseworker with MCCSB, was the sole witness to testify at the January 31, 2008 permanent custody hearing. Wheelock indicated that the original goal with Tasha was reunification of the family. He stated that the basic concerns were Tasha's ability to provide for her and the children's basic needs. Tasha was required to secure housing and provide a lease and rent receipts from her landlord, to seek and obtain taxable income and to provide copies of her pay stubs, and to reinstate WIC for the boys. Wheelock indicated that none of this had been done due to her incarcerations.
 {¶ 19} At the time of the hearing, Tasha had been moved from Marysville to the Franklin Pre-Release Center in Columbus, Ohio. Her release date was approximately June 8, 2008. Wheelock stated that Tasha intended to live with her sister temporarily *Page 7 
after her release and then go to the Franklin House. Wheelock stated that Tasha had frequently lived with her grandmother and that her grandmother had "always been there to get her on her feet," but that the grandmother had died.
 {¶ 20} Tasha's case plan also required her to obtain counseling, to take medication, if ordered, and to complete parenting classes. Wheelock stated that, prior to going to prison, Tasha had been offered the opportunity to participate in the Monday program in Montgomery County, which would have afforded her the opportunity to work on these requirements and remain close to her children. Tasha had elected to go to prison instead. Wheelock testified that Tasha was taking college courses at Marysville. As of January 4, 2008, Tasha was on a wait list for parenting classes, and she had not completed them. Tasha reported to Wheelock that counselors at Marysville told her that she did not need counseling. Tasha, however, did not provide documentation of that assessment despite Wheelock's requests for documentation. Because MCCSB does not transport children to the prison, Tasha had had no visitation while incarcerated.
 {¶ 21} At the time of the hearing, B.F. was two and one-half and D.F. was one and one-half years old. Wheelock stated that B.F. and D.F. were closely bonded to each other and their foster parents, with whom they were placed together. When visited by the guardian ad litem, B.F. introduced the foster parents as "mom and dad." The children knew Tasha's name but neither child recognized Tasha's picture. The boys have no sibling relationship with their older sisters. Wheelock stated that the foster parents love the children, and they expressed interest in adopting both children. Wheelock testified that he had made efforts to find other relatives who might take the *Page 8 
children, but the boys' fathers, Tasha's sister and Tasha's parents were not interested in raising the children. Wheelock indicated that the boys each have some special medical issues, which the foster parents have been addressing.
 {¶ 22} During Tasha's counsel's cross-examination of Wheelock, Wheelock indicated that he had not heard that Tasha was currently taking parenting classes. Wheelock acknowledged that Tasha wanted reunification with her children and that reunification could be possible if Tasha diligently worked on her case plan upon her release.
 {¶ 23} Upon further questioning by MCCSB, Wheelock stated that he had seen no demonstrated commitment by Tasha that she wanted to complete her case plan so as to warrant an extension of temporary custody. Wheelock noted Tasha's election to go to prison rather than participate in the Monday program. Wheelock believed that Tasha could not meet the current needs of the children and that permanent custody to MCCSB was in the best interest of D.F. and B.F.
 {¶ 24} The parties consented to the admission of the CASA report, which was filed on November 16, 2007. Vanessa Heslep, the CASA, concluded that, "[d]ue to Tasha's current situation there are to[o] many unknowns, no apparent family support, no responsibility or accountability for her situation, release date from prison, no job or means to support herself much less two children, to warrant returning the boys to her care." At the hearing, the court asked Heslep, who was in attendance, if she wished to supplement her report. Heslep reiterated that she supported MCCSB's motion for permanent custody. She stated that the boys had made significant progress over the last year and that the foster home was a very stable, loving environment. *Page 9 
 {¶ 25} At her request, Tasha did not appear at the hearing and did not testify on her own behalf.
 {¶ 26} Upon review of the evidence, we conclude that MCCSB presented clear and convincing evidence that permanent custody to the agency was in the children's best interest and that the boys could not be returned to Tasha within a reasonable period of time. B.F. and D.F. entered foster care in December 2006, and Tasha was presented with a case plan in January 2007. Although Tasha was briefly out of jail in January and February 2007, she was arrested on a drug charge in March 2007. Tasha could have chosen to participate in a residential treatment program, yet she elected to go to prison. When MCCSB moved for permanent custody in September 2007, Tasha was expected to be incarcerated for an additional nine months. Little, if any, progress was made on the case plan in 2007. Although Tasha represented that she had begun parenting classes in January 2008, she had made no other progress on her case plan, and she provided no documentation that counseling was unnecessary.
 {¶ 27} It is apparent from the evidence that Tasha would have substantial case plan requirements to achieve upon her release from prison, at which time the children would have been in custody for approximately eighteen months. She would need to obtain stable housing and employment, and she would need to address the boys' medical needs. The evidence indicates that Tasha would have little family support. As stated by the magistrate, "[g]iven the length of time [B.F. and D.F. have] already been in custody, allowing time for Tasha to complete her prison sentence and even the most basic case plan services for reunification is unreasonable."
 {¶ 28} The evidence further demonstrated that B.F. and D.F. were placed in a *Page 10 
stable, loving home with foster parents who wished to adopt them as a pair. Their medical needs were being addressed, and both children had made much progress since entering foster care. The children referred to their foster parents as "mom and dad" and were bonded with the foster parents' biological children. The evidence clearly and convincingly demonstrated that it was in the children's best interest that Tasha's parental rights be terminated and that permanent custody be granted to MCCSB.
 {¶ 29} The first assignment of error is overruled.
 {¶ 30} "APPELLANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 31} In her second assignment of error, Tasha claims that her counsel rendered ineffective assistance by failing to secure her testimony and to offer evidence or witnesses on her behalf at the January 31, 2008 hearing.
 {¶ 32} Tasha relies upon our recent decision, In re S.A., Clark App. No. 07-CA-110, 2008-Ohio-2225. In In re S.A., the Clark County Department of Job and Family Services sought permanent custody of appellant-mother's child. At the time of the scheduled hearing, the mother, Suretha Rogan, was incarcerated in Marysville. Although the factual circumstances are not described in detail, the trial court apparently refused to order Rogan transported to the court from the prison for purposes of the hearing and it denied a three-month continuance so that she could testify after her release from prison. At the hearing, the only evidence that Rogan's counsel offered on her behalf was a brief questionnaire that she had completed for her *Page 11 
counsel early in his representation.
 {¶ 33} On review, we concluded that Rogan's counsel "had a duty to obtain more meaningful input from Rogan." We stated: "Besides her live testimony, counsel had other options to protect Rogan's rights. For example, he could have deposed Rogan; he could have obtained her sworn affidavit or statement; or he could have arranged for her participation in the hearing via telephone. He failed to do any of these, thereby depriving Rogan of a meaningful opportunity to participate in the permanent custody hearing." We thus concluded that Rogan's counsel was deficient and that his failure to protect Rogan's rights rendered the trial to be fundamentally unfair. We thus reversed the trial court's judgment due to ineffective assistance of counsel. We overruled, as moot, an assignment of error as to whether the trial court denied her due process rights by failing to transport her to the hearing.
 {¶ 34} In reaching our conclusion in In re S.A., we relied upon In reRoque, Trumbull App. No. 2005-T-0138, 2006-Ohio-7007, in which the Eleventh District found an incarcerated mother's counsel to be ineffective when, at the time of the permanent custody hearing, counsel had not spoken to the mother in eight months, had failed to attend review hearings, had failed to participate in discovery, had failed to challenge hearsay evidence submitted at the permanent custody hearing, and had failed to effectively cross-examine the state's witnesses. The mother's counsel had also allowed three letters from her to the trial court, pleading for its help, to suffice for the mother's participation in the permanent custody hearing and had failed to object to their admission as evidence against her.
 {¶ 35} We find the present circumstances distinguishable from In reS.A. and In *Page 12 re Roque. In this case, the permanent custody hearing on MCCSB's motion was originally scheduled for November 21, 2007. On November 9, 2007, the trial court issued an order that Tasha be transported from the Franklin Pre Release Center in Columbus to the Miami County Jail for the purpose of her participation at the hearing on November 21, 2007. On November 21, 2007, MCCSB filed a motion to continue the hearing, indicating Tasha "has recently obtained counsel, Bradin Marlow, and wants to adequately prepare for the Permanent Custody hearing." The trial court continued the hearing until January 31, 2007.
 {¶ 36} On January 11, 2007, the trial court received a letter from Tasha, in which Tasha indicated that she did not want to be brought to court for the permanent custody hearing. Tasha wrote that she did not want to lose her children. She explained that she was enrolled in a "College, Parenting and Responsibility Life Skills" class and that returning to court would cause her to lose this class and be placed back on the bottom of the wait list. She stated that "[i]f I would have had any idea their father (Mr. [F.]) wasn't going to care for them, [I] would have taken a rehabilitation program, but [I] didn't and don't have a problem and [I] felt [I] was wrong to take a place in a program someone else needed." Tasha concluded: "My lawyer will be present during the hearing and [I] honestly feel that finishing these programs and not comming [sic] to court is a benifit [sic] and a step closer to proving [I] am trying to be a good mother and how much [I] want my children."
 {¶ 37} At the beginning of the hearing, the trial court acknowledged that Tasha was not present but her counsel was present. The court indicated its understanding that Tasha had requested not to be conveyed to court for the hearing. Ms. Marlow *Page 13 
stated that Tasha was at the Franklin Pre-Release Center, and "that was her request that she not be conveyed back for today's hearing."
 {¶ 38} Unlike In re S.A., Tasha was afforded an opportunity to participate in the permanent custody hearing; she could have attended the hearing. Yet, at her own initiative, Tasha informed the trial court and her counsel that she did not want to be conveyed from prison to court for purposes of the hearing. Tasha's letter indicates that she believed her counsel's presence to be adequate. In addition, unlike the mother in In re S.A. who sought a continuance so that she could testify at the hearing, it is speculative whether Tasha wished to actively participate at the January 31 permanent custody hearing. The record does not reflect any conversations that may have occurred between Tasha and her counsel subsequent to the January 11 letter, which is not surprising as those conversations would be protected by attorney-client privilege. Although Tasha asserts that her counsel should have obtained her input other than through live testimony, we do not find counsel's failure to seek alternative means to be unreasonable in light of Tasha's election not to appear personally. Counsel was required to protect an incarcerated parent's right to meaningful participation, not to force participation when the parent has elected not to use the option that the court has made available to her.
 {¶ 39} Moreover, we find no evidence in the record that Tasha was prejudiced by her failure to participate. Through cross-examination, Tasha's counsel conveyed that Tasha had begun participating in a parenting class and that she had consistently expressed interest and concern about her children. Based on the CASA report, it appears that there were no family members who would be willing to testify on her *Page 14 
behalf. Because Tasha elected not to be present at the hearing, we do not find her absence to render the trial fundamentally unfair. In sum, we find no ineffective assistance of counsel in this case.
 {¶ 40} The second assignment of error is overruled.
 {¶ 41} The judgment of the trial court will be affirmed.
FAIN, J. and DONOVAN, J., concur.
Copies mailed to:
Jeannine N. Pratt
Suzanne P. Beck
 Hon. Lynnita K.C. Wagner *Page 1