OPINION
{¶ 1} R.J. appeals from the trial court's decision and entry awarding permanent custody of her minor child, T.J., to Montgomery County Children Services.
 {¶ 2} The appellant advances three assignments of error on appeal. First, she contends the trial court erred in failing to appoint an attorney to represent T.J. in the *Page 2 
permanent custody proceedings. Second, she claims the trial court's permanent custody decision was against the manifest weight of the evidence. Third, she claims the permanent custody decision was based on legally insufficient evidence.
 {¶ 3} The record reflects that T. J. was born in April 2004 when the appellant was sixteen years old. At that time, the appellant was living with her maternal grandmother. MCCS filed a complaint in June 2004, alleging that T.J. was a dependent child. In support, MCCS asserted that the maternal grandmother had asked the appellant and T.J. to leave and that no other relatives were available to provide care. The appellant and T.J. subsequently both were adjudicated dependent and placed in foster care.[1]
 {¶ 4} Following T.J.'s dependency adjudication, MCCS obtained temporary custody in September 2004 and developed a case plan for reunifying the appellant with her child. The trial court twice extended temporary custody to give the appellant additional time to satisfy her case plan objectives. The trial court later placed T.J. in a planned permanent living arrangement where the child continued in foster care. On February 27, 2008, MCCS moved for permanent custody primarily due to the appellant's lack of progress on her case plan. The trial court held a hearing on the motion on June 11, 2008 and September 23, 2008. It sustained the permanent custody motion on October 7, 2008. This timely appeal followed.
 {¶ 5} In her first assignment of error, the appellant contends the trial court erred in failing to appoint an attorney to represent T.J. in the permanent custody proceedings. *Page 3 
This argument concerns a June 6, 2008 motion the appellant filed seeking legal counsel for her child. In support of the motion, the appellant asserted the possibility of a conflict between T.J.'s wishes and the guardian ad litem's custody recommendation. She also asked the trial court to interview T. J. in camera.
 {¶ 6} A magistrate subsequently conducted the in camera interview. The magistrate found that the child "demonstrated almost no ability to converse on a given topic." She also "expressed no preference concerning her custody or living arrangements" and failed to "demonstrate an ability to work with an attorney to assist her in pursuing any particular course concerning her custody." As a result, the appellant's motion to appoint counsel for T. J. was denied.
 {¶ 7} On appeal, the appellant cites In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500, syllabus, for the proposition that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." The Williams court recognized that "courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the guardian ad litem being appointed to represent the child." Id. at 403. In Williams, an older child repeatedly expressed a desire to remain with his mother while the guardian ad litem recommended termination of parental rights. The Ohio Supreme Court cited with approval the lower court's decision to follow cases holding "that when a guardian ad litem who is also appointed as the juvenile's attorney recommends a disposition that conflicts with the juvenile's wishes, the juvenile court must appoint independent counsel to represent the child." Id. at 403. *Page 4 
 {¶ 8} "The circumstances which the Supreme Court addressed inWilliams arise when a guardian ad litem who is also appointed as the juvenile's attorney recommends a disposition in a permanent custody proceeding that conflicts with the juvenile's wishes. The juvenile court must then appoint independent counsel to represent the child, because `the duty of a guardian ad litem to a ward [to recommend to the court what the guardian feels is in the best interest of the ward] and the duty of a lawyer to a client [to provide zealous representation] may be in fundamental conflict in a dual-representation situation.'" In reH.R., H.R. E.R., Montgomery App. No. 21274, 2006-Ohio-1595, ¶ 6, quoting Williams, 101 Ohio St.3d at 403.
 {¶ 9} The appellant's reliance on Williams is unpersuasive for at least two reasons. First, the circumstances at issue in that case do not exist here. Although T. J.'s guardian ad litem, John Lombard, happened to be an attorney, he was never appointed to serve as the child's counsel.[2] Lombard was appointed to serve only as guardian ad litem. Therefore, there was no Williams-type conflict necessitating the appointment of "independent counsel." Second, even if Williams did apply, we would find no error. In his reports to the court, Lombard noted that T. J. was unable to express her wishes regarding custody. Lombard expressed his own belief that MCCS should be granted permanent custody of T.J., who had bonded well with her foster family. As set forth above, the magistrate also found that T. J. expressed no preference regarding custody and displayed no ability to assist an attorney. Unlike Williams, the record does not indicate any conflict between the guardian ad litem's opinions and T. J.'s wishes. Without evidence that T. J. *Page 5 
wanted to be reunited with the appellant, the trial court did not abuse its discretion in refusing to appoint independent counsel for the child.In re J.R., Z.R. and S.R., Montgomery App. No. 21749, 2007-Ohio-186, ¶ 6
("[T]here is no basis to conclude that a conflict existed between the opinion of the guardian ad litem and the desires of the children. Accordingly, there is no basis to conclude that the trial court abused its discretion in refusing to appoint an attorney for Z.R. and S.R.").
 {¶ 10} Finally, although it might be argued that the failure to appoint any counsel for T.J. was error, the appellant's argument below and on appeal is that the trial court should have appointed independent counsel because the child's wishes conflicted with the guardian ad litem's opinions. As explained above, the record belies her claim. In any event, the trial court's failure to provide T.J. with any legal representation in this case would constitute at most harmless error. The purpose of such counsel in permanent custody cases is to provide zealous advocacy of the child's position. Williams, 101 Ohio St.3d at 403. In the present case, however, T.J. was unable to express a position regarding custody or to assist an attorney in pursuing a particular course of action. Under these circumstances, an attorney's role would be reduced to recommending what he or she personally believed was best for the child. But guardian ad litem Lombard already filled that role. Therefore, T.J. could not have been prejudiced by the lack of her own legal representation. Cf. In re A.S., Franklin App. No. 05AP-351, 05AP-352, 2005-Ohio-5492, ¶ 10. ("A.S. is low-functioning, has limited communication abilities, and is unable to express her wishes as to custody. Under these circumstances, separate counsel would be of no assistance, as counsel would be unable to determine the desires of the child in order to represent her interests."); In re Joshua B., Sandusky App. Nos. S-02-018, S-02-021, *Page 6 
S-02-019, S-02-020, 2003-Ohio-3096, ¶ 10. The first assignment of error is overruled.
 {¶ 11} In her second and third assignments of error, which are briefed together, the appellant contends the trial court's permanent custody decision is against the weight of the evidence and is not supported by legally sufficient evidence. The essence of her argument is that the trial court did not give her an adequate opportunity to satisfy her case plan objectives. The appellant notes that she too was under the care of MCCS until several months before the agency moved for permanent custody. The appellant contends MCCS and the trial court acted unreasonably by essentially penalizing her for failing to satisfy case plan objectives while she herself was still a child. Because she had made some progress on her objectives, the appellant asserts that the trial court should have given her additional time, after her emancipation, to comply with her case plan.
 {¶ 12} Upon review, we find the appellant's argument to be unpersuasive. A trial court shall terminate parental rights and grant permanent custody to the State upon a finding, by clear and convincing evidence, that permanent custody is in a child's best interest and that the child has been in the State's custody for at least twelve of the preceding twenty-two months. R.C. § 2151.414(B)(1)(d). Alternatively, a trial court shall grant permanent custody if it finds, by clear and convincing evidence, that permanent custody is in the child's best interest and that the child cannot be placed with a parent within a reasonable period of time or should not be placed with either parent because the parents have failed continuously and repeatedly to substantially remedy the conditions that caused the child to be removed from the home, despite reasonable case planning and diligent efforts to assist in reunification. R.C. § 2151.414(B)(2) and (E). Both *Page 7 
alternatives apply in this case.
 {¶ 13} T.J. was placed in the care of MCCS in June 2004, just two months after her birth. MCCS obtained temporary custody of T.J. in September 2004. MCCS moved for permanent custody in February 2008. The trial court completed its permanent custody hearing in September 2008. At that time, T.J. had been in the custody of MCCS for more than four years. In addition, the trial court found that T.J. could not be placed with the appellant within a reasonable time because she had failed to remedy the conditions causing the child to be placed in temporary custody, had failed to utilize the social and rehabilitative services made available to her, and had failed to complete her case plan despite being given multiple referrals and assistance. The trial court also found that granting MCCS permanent custody was in T.J.'s best interest based upon (1) the appellant's "inconsistency in behavior and ability to appropriately parent the child," who had established a strong bond with her foster parents, (2) the child's failure to express a preference concerning custody, (3) the lengthy custodial history while the appellant failed to make significant progress on her case plan, and (4) the child's need for a permanent placement that the appellant had not demonstrated an ability to provide.
 {¶ 14} With regard to the appellant's case plan objectives, which are the sole focus of her appeal, the trial court made the following findings of fact:
 {¶ 15} "22. The mother's case plan objectives and progress on those objectives are as follows:
 {¶ 16} "a. The mother was to obtain a parenting and psychological assessment and follow the recommendations. The Agency made a written referral to Crisis Care in February 2008. The mother did schedule at least two assessments but failed to appear *Page 8 
each time. This objective is not complete.
 {¶ 17} "b. The mother was to complete parenting classes. The Agency made referrals to Celebrating Families and to classes through the Family Services Association. The mother did make contact with the organizations but failed to attend any classes. The mother claims to have completed a parenting class in Indianapolis, Indiana called Time Out for Parents' but failed to provide any documentation. This objective is not complete.
 {¶ 18} "c. The mother was to obtain safe, stable and independent housing. The mother was referred to DMHA but failed to obtain housing. The mother claims that she has lived in an apartment at Woodman Parks since June 1, 2008. However, she failed to inform her case worker or the Court until September 19, 2008, and never provided any actual documentation. This objective is not complete.
 {¶ 19} "d. The mother was to obtain sufficient and stable income that could support her needs and the needs of the child. The Agency gave the mother information about receiving job coaching. The mother receives $162 a month in food stamps. She also claims to be married to a man who does not have a Social Security number and earns an income by selling cell phones for his uncle and receives payment `under the table.' The mother did not provide any verification of the marriage or income. This objective is not complete.
 {¶ 20} "e. The mother was to complete anger management classes. The Agency referred the mother to the Family Services Association and Nova House. The mother did make contact with the organizations but failed to begin the classes. This objective is not complete.
 {¶ 21} "f. The mother was to visit the child on a consistent and regular basis. *Page 9 
Supervised visitation was scheduled at the Agency each Friday from 1:00 p.m. until 3:00 p.m. Mother has been consistent with her visitation in the recent past. However, during visits on January 10, 2008, and June 3, 2008, the mother was removed from the Agency for using profanity and disrespecting the staff.
 {¶ 22} "23. The mother failed to complete her case plan."
 {¶ 23} At the permanent custody hearing, the appellant conceded that she had not made much progress on her case plan during the preceding two years. She agreed with the prosecutor that she had not obtained stable housing or stable income. She also agreed that she had not addressed anger management or completed her other case plan objectives. When asked why she had not made more progress, the appellant responded, "I don't have no clue." The appellant later opined that she had tried her hardest and should not be criticized "for not moving as fast as you guys [are] expecting me to move at all." The appellant's attorney also admitted during closing argument that she had not completed all of her case plan objectives. He asserted, however, that she had done certain things well and should be given more time. The appellant repeats this argument on appeal.
 {¶ 24} On review, we must affirm the trial court's decision unless it is unsupported by clear and convincing evidence, which is proof that produces a firm belief or conviction as to the facts sought to be established. In re A.U., Montgomery App. Nos. 20583, 20585,2004-Ohio-6219, ¶ 17. Moreover, a court's "decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a term ination of parental rights have *Page 10 
been established." In re B.F., Miami App. No. 2008 CA 11,2008-Ohio-5156, ¶ 9.
 {¶ 25} In the present case, the record reflects that MCCS accommodated the appellant's needs from the time she and T. J. came under the agency's care in 2004. The appellant nevertheless failed to make significant progress on her case plan objectives. Even after her emancipation from MCCS in October 2007, which occurred just before her twentieth birthday, the appellant admittedly fell short of her objectives. As an adult, she also had numerous charges for disorderly conduct and one for aggravated menacing. In addition, she was arrested on an active warrant for a probation violation. We note that MCCS did not move for permanent custody in this case until February 2008, and the trial court did not finish its permanent custody hearing until late September 2008. At that time, the appellant, who was nearly twenty-one years old, remained unemployed and still had not completed the various assessments and classes required by her case plan. While it appears that she had made some progress at the time of the permanent custody hearing, the trial court apparently concluded that it was too little, too late.
 {¶ 26} Having reviewed the record, including the hearing transcript and the guardian ad litem's reports, we find competent, credible evidence from which the trial court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights had been established. The appellant's argument that she should have been granted even more time to regain custody "overlooks the importance of [T.J.'s] right to [a] `stable, secure, nurturing and permanent home in the near term.'" In re S.K., S.K. J.K., Clark App. Nos. 2008 CA 67, 2008 CA 68, 2008 CA 69, 2009-Ohio-427, ¶ 15, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 317.
 {¶ 27} Finally, we are unpersuaded by the appellant's citation toIn re Outright, *Page 11 
Portage App. No. 2003-P-0081, 2004-Ohio-1524, and In re Cunningham, Athens App. No. 03CA26, 2004-Ohio-787. The facts of both cases are markedly different than the facts before us. In Cutright, the appellee mother was well "on her way to having her children returned to her." Witnesses testified that her stress management and parenting skills had improved dramatically. The appellee had made "strides toward becoming a better parent," had complied with most of her case plan, and "appeared to be in a position to provide for her children's basic and medical needs." Under these circumstances, the Eleventh District found no error in the trial court's denial of the State's motion for permanent custody.
 {¶ 28} In Cunningham, the appellee father relatively quickly had undergone substance abuse counseling, acquired a home, and obtained employment. In light of these rapid improvements, the trial court refused to allow the State to terminate his parental rights without first giving him an opportunity to satisfy his own personal case plan. Because the father had not received such an opportunity, the trial court overruled the State's motion for permanent custody and the Fourth District affirmed. Notably, only about one and a half years had passed in Cunningham between the award of temporary custody to the State and the trial court's denial of the motion for permanent custody.
 {¶ 29} The record before us reflects that the appellant made substantially less progress than the appellees in Cutright andCunningham. Unlike the appellee in Cunningham, she also received approximately four years to fulfill her case plan requirements. In light of the duration of the appellant's opportunity and her lack of progress, the trial court did not err in awarding permanent custody to MCCS. Having determined that the trial court's permanent custody decision is not against the weight of *Page 12 
the evidence and is supported by legally sufficient evidence, we overrule the appellant's second and third assignments of error.
 {¶ 30} The judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.
FAIN and GRADY, JJ., concur.
[1] T.J.'s alleged father lives out of state and did not participate in the proceedings below.
[2] The trial court approved Lombard replacing Danielle Cummings as guardian ad litem on October 11, 2006. *Page 1